## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| John Doe 3, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. NO.: 6:22-CV-03510-HMH |
| Varsity Brands, LLC; Varsity Sprit, LLC; | ) | |
| Varsity Brands Holding Company, Inc.; U.S. | ) | |
| All Star Federation; USA Federation of Sport | ) | |
| Cheering d/b/a USA Cheer; Charlesbank | ) | |
| Capital Partners, LP; Bain Capital, LP; Jeff | ) | |
| Webb, individually; Rockstar Cheer & | ) | |
| Dance, Inc.; Katherine Anne Foster as the | ) | |
| personal representative of the Estate of Scott | ) | |
| Foster; Kathy Foster; Traevon Black a/k/a | ) | |
| Trey Black n/k/a Tracey Black; Jarred | ) | |
| Carruba; and other Unknown Defendants, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT JEFF WEBB'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

## TABLE OF CONTENTS

## CONTENTS

**SUMMARY** ............................................................................................................... 1

**STATEMENT OF FACTS & ALLEGATIONS** .......................................................... 2

    **A.** *Plaintiff's Jurisdictional Allegations* .............................................................. 2

    **B.** *Relevant Jurisdictional Facts* ......................................................................... 3

    **C.** *Substantive Allegations and Factual Background* ........................................... 4

**RULE 12(B)(2) MOTION TO DISMISS ARGUMENT** .............................................. 6

**I.**    **RULE 12(b)(2) LEGAL STANDARD** ................................................... 6

**II.**   **THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. WEBB.** ....................................................................................................... 7

    **A.** *The Court does not have general jurisdiction over Mr. Webb.* ..................... 8

    **B.** *The Court does not have specific jurisdiction over Mr. Webb.* ..................... 9

    **C.** *Mr. Webb's roles with Varsity cannot serve as a basis for personal jurisdiction.* ..... 11

    D.  *Section 2255's and RICO's nationwide service of process provisions do not support personal jurisdiction over Mr. Webb.* ............................................................... 13

**III.**   **RULE 12(b)(6) LEGAL STANDARD** ................................................. 17

**IV.**   **PLAINTIFF'S CLAIMS UNDER 18 U.S.C. § 2255 SHOULD BE DISMISSED.** 17

**V.**   **PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED.** ................................... 20

    **A.** *Plaintiff lacks standing to assert his RICO claim.* ........................................ 20

    **B.** *Plaintiff fails to allege the existence of any RICO "enterprise."* ............................... 23

    **C.** *Plaintiff fails to allege Mr. Webb participated in any pattern of racketeering activity.* ............ 25

**VI.**   **PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED.** .............................. 28

    **A.** *Plaintiff's gross negligence claim should be dismissed.* ................................ 28

    **B.** *Plaintiff's civil conspiracy claim should be dismissed.* ................................ 31

    **C.** *Mr. Webb is not liable for any torts of the corporation.* ................................ 33

**CONCLUSION** ...................................................................................................... 34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987)................................................................................................15

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ..............................................................................7, 9

*Anthony v. Ward*,
   336 Fed. Appx. 311 (4th Cir. 2009) ......................................................................31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................16, 17, 23

*Becker v. Noe*,
   2019 WL 1415483 (D. Md. March 27, 2019) .......................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2009)...............................................................................................17

*Bills v. Virginia Dep't of Educ.*,
   No. 6:21-CV-51, 2022 WL 1811383 (W.D. Va. June 2, 2022)........................17, 20

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   567 F. Supp. 3d 667 (D.S.C. 2021)..................................................................28, 29

*Bothuell v. Grace*,
   No. 16-11009, 2017 WL 892343 (E.D. Mich. Feb. 16, 2017)..................................5

*Bowen v. Adidas Am., Inc.*,
   541 F. Supp. 3d 670 (D.S.C. 2021).............................................................20, 21, 22

*Boyle v. United States*,
   556 U.S. 938 (2009)...............................................................................................23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................................9

*In re Celotex Corp.*,
   124 F.3d 619 (4th Cir. 1997) ..................................................................................6

*Colson v. Samson Hair Restoration, LLC*,
   837 F. Supp. 2d 564 (D.S.C. 2011).........................................................................9

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ................................................7

*Doe v. City of Gauley Bridge*,
  No. 2:21-cv-00491, 2022 WL 3587827 (S.D.W.V. Aug. 22, 2022)....................18, 19

*Doe v. Liberatore*,
  478 F. Supp. 2d 742 (M.D. Pa. 2007) .....................................15, 17, 18

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) ................................................8

*ESAB Grp., Inc. v. Centricut, LLC*,
  34 F. Supp. 2d 323 (D.S.C. 1999)........................................7, 13

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) .............................................8, 9, 10

*Gault v. Thacher*,
  367 F. Supp. 3d 469 (D.S.C. 2018)..........................................11

*Gilbert v. United States Olympic Committee*,
  No. 18-cv-00981-CMA-MEH, 2019 WL 1058194 (D. Colo. 2019)....................22

*Hall v. Tyco Intern., Ltd.*,
  223 F.R.D. 219 (M.D.N.C. 2004) ...........................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984).......................................................7, 8

*Holmes v. SIPC*,
  503 U.S. 258 (1992).......................................................22

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).......................................................8

*Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*,
  No. 6:22-cv-02957-HMH (D.S.C. Sept. 15, 2022) ..............................6

*Johnson v. PennyMac Loan Services, LLC*,
  No. 4:21-cv-0815-TLW-TER, 2022 WL 410078 (D.S.C. Jan. 19, 2022) ............14

*Jones v. Ram Med., Inc.*,
  807 F. Supp. 2d 501 (D.S.C. 2011).........................................25

*Kulko v. California Superior Court*,
  436 U.S. 84 (1978)........................................................7

*Lifschultz Fast Freight, Inc. v. Cons. Freightways Corp. of Delaware*,
    805 F. Supp. 1277 (D.S.C. 1992) .................................................................20, 22, 25

*Magic Toyota, Inc. v. Se. Toyota Distributors, Inc.*,
    784 F. Supp. 306 (D.S.C. 1992) ...............................................................................11, 12

*McMillan v. Oconee Me. Hosp., Inc.*,
    626 S.E.2d 884 (S.C. 2006) ...................................................................................31

*Nichols v. G.D. Searle & Co.*,
    991 F.2d 1195 (4th Cir. 1993) ...............................................................................7

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*,
    611 F. Supp. 2d 513 (E.D. Va. 2009) ....................................................................14

*Paradis v. Charleston Cnty. Sch. Dist.*,
    861 S.E.2d 774 (S.C. 2021), reh'g denied (Aug. 18, 2021)...............................30, 32

*Rainey v. S.C. Dep't of Soc. Services*,
    863 S.E.2d 470 (Ct. App. 2021)...........................................................................28, 29

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)...............................................................................................24

*Rice v. M-E-C Co.*,
    No. 2:17-CV-1274-PMD, 2017 WL 4812590 (D.S.C. Oct. 25, 2017)......................10, 12, 13

*Roane County, Tennessee v. Jacobs Eng'g Group, Inc.*,
    No. 3:19-CV-206-TAV-HBG, 2020 WL 2025613 (E.D. Tenn. Apr. 27, 2020) ......................5

*Rojas v. Delta Airlines, Inc.*,
    425 F. Supp. 3d 524 (D. Md. 2019) ........................................................................22, 23, 24

*Salley v. Heartland–Charleston of Hanahan, SC, LLC*,
    No. 2:10-cv-791-DCN, 2010 WL 5136211 (D.S.C. Dec. 10, 2010) .......................12

*Savannah Bank, N.A. v. Stalliard*,
    734 S.E.2d 161 (S.C. 2012) ...................................................................................28

*Scott v. Catawba Valley Brewing Co.*,
    No. 2:18-CV-1539-RMG, 2018 WL 3966261 (D.S.C. Aug. 17, 2018) ................................32

*Simmons v. United Mortg. & Loan Inv.*,
    LLC, 634 F.3d 754 (4th Cir. 2011).........................................................................17

*Smith v. Husband*,
    376 F. Supp. 2d 603 (E.D. Va. 2005) .....................................................................15, 17

*Solanki v. Wal-Mart Store No. 2806*,
    763 S.E.2d 615 (Ct. App. 2014)......................................................................28

*Steinke v. Beach Bungee, Inc.*,
    105F.3d 192(4th Cir. 1997) ..........................................................................32

*Swarey v. Desert Capital REIT, Inc.*,
    2012 WL 4208057 (D. Md. Sept. 20, 2012) ........................................................14

*Toney v. SSC Sumter E. Operating Co., LLC*,
    No. CV 3:19-3226-JFA, 2020 WL 12744577 (D.S.C. Apr. 29, 2020)................................6, 7

*Trivelas v. S.C. DOT*,
    558 S.E.2d 271 (Ct. App. 2001).....................................................................29

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) ........................................................................13

*U.S. v. Cornell*,
    780 F.3d 616 (4th Cir. 2015) ........................................................................27

*United Food & Commercial Workers Unions v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ........................................................................24

*Estate of Valentine by & through Grate v. South Carolina*,
    No. CV 3:18-00895-JFA, 2019 WL 8324709 (D.S.C. Aug. 6, 2019) ....................................20

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................9

## Statutes and Rules

18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2242, 2243, 2252, 2251A, 2252, 2252A,
    2260, 2421, and 2423 .................................................................................17

18 U.S.C. § 1962(c),(d) ..............................................................................13

18 U.S.C. § 1965 .....................................................................................13

18 U.S.C. § 2255 ....................................................2, 13, 14, 15, 16, 17, 18, 19, 25, 27

18 U.S.C. § 2255(a) ...............................................................................17, 18

18 U.S.C. § 2255(c)(2) ................................................................................13

Federal Rule of Civil Procedure 9(b) ..................................................................25

Federal Rule of Civil Procedure Rule 12(b)(2).......................................................3, 6

Federal Rule of Civil Procedure 12(b)(6) ........................................................................16

**Treatises and Commentary**

16 Am. Jur. 2d Conspiracy § 53 (2020)..........................................................................32

4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067
    (1987)..........................................................................................................................8

## SUMMARY

Plaintiff's First Amended Complaint (the "Complaint") presents a horrifying narrative of abuse and trauma that Plaintiff experienced. The Complaint alleges that two individuals perpetrated sexual and physical abuse against Plaintiff, while one more individual was aware of the alleged abuse. The Complaint makes no such allegation against Jeff Webb, nor can Plaintiff make such an allegation. The Complaint does not, and cannot, allege that Mr. Webb was aware of any of the alleged abusive conduct, nor that he possessed any control or oversight over the alleged perpetrators of such abuse. As the Complaint makes obvious, the alleged abuse and trauma has nothing to do with Mr. Webb.

The Complaint also makes obvious that there is no basis for Mr. Webb to be a defendant in this lawsuit in South Carolina. The Complaint is devoid of any allegations that Mr. Webb took any action in South Carolina, that he directed any action towards South Carolina, or that he had any connections with any party in South Carolina—specifically, the Plaintiff or any of his alleged abusers. As detailed below, Mr. Webb has had limited contact, in any form, with South Carolina. The limited contact he has had did not render Mr. Webb "at home" in South Carolina, was entirely unrelated to the alleged facts underlying this lawsuit, and does not give rise to personal jurisdiction.

The Complaint acknowledges that Mr. Webb is an innovator who revolutionized cheerleading, transforming it from a sideline activity into a sport where athletes engage in competitions. It also recognizes that Defendant Varsity,[1] which Mr. Webb founded and led for decades, has pioneered the transformation and growth of cheerleading, serving millions of young people and their families. These contributions to cheerleading do not provide any basis to impose liability on Mr. Webb for the alleged conduct of a handful of rogue bad actors.

---

[1] For the purposes of this memorandum, "Varsity" means Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Brands Holding Company, Inc.

Nonetheless, Plaintiff not only attempts to impose civil liability on his alleged tormentors, but he also seeks to hold Varsity, its related entities, and Mr. Webb responsible. Specifically, Plaintiff purports to assert claims against Mr. Webb under the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, 18 U.S.C. § 2255, the Racketeer Influenced Corrupt Organizations Act, for gross negligence, and for civil conspiracy. None of his claims against Mr. Webb are colorable or plausible. At best, this attempt to impose liability on Mr. Webb is misguided, stemming from Plaintiff's misunderstanding of Mr. Webb's role with Varsity and his contributions to cheerleading during the relevant time period. Otherwise, Plaintiff's addition of Mr. Webb as a defendant in this suit is nothing more than a blatant attempt to draw more attention to already salacious litigation.

As detailed below, the Court should dismiss Mr. Webb from this lawsuit entirely. First, the Court should dismiss Mr. Webb from this lawsuit because Mr. Webb lacks the contacts with South Carolina sufficient for the Court to exercise personal jurisdiction over him. Moreover, even if the Court had jurisdiction over Mr. Webb, it should nonetheless dismiss all claims against him because each of the four causes of action that Plaintiff asserts against him are fatally flawed and unsupported by sufficiently alleged facts.

## STATEMENT OF FACTS & ALLEGATIONS

### A.     *Plaintiff's Jurisdictional Allegations*

Plaintiff alleges that Mr. Webb "was a citizen of Memphis, Tennessee" "at all times relevant" to the Complaint. (Compl. ¶ 20.) The only jurisdictional allegation relating to South Carolina, and this District, is that "Mr. Webb . . . created, owned, operated, and controlled Defendant Varsity Brands, Defendant Varsity Spirit, LLC, Defendant Varsity Brands Holding Company, Inc., Defendant USASF, and Defendant USA Cheer, all of which did business throughout the United States." (*Id.*) The Complaint alleges further that "Defendant Webb

2

proposed a merger [of the National All-Star Cheerleading Coaches Congress ("NACCC") with the USASF], which took place in his board room at Varsity headquarters in Memphis." (*Id.* at ¶ 50.) The Complaint otherwise does not specify any conduct with respect to Mr. Webb that took place in any particular jurisdiction—South Carolina or elsewhere.

### B.    *Relevant Jurisdictional Facts*

Mr. Webb is an individual who resides in the State of Tennessee. (Webb Decl. ¶ 1.)[2] Mr. Webb does not reside in South Carolina or own any real or personal property in South Carolina. (*Id.* ¶ 3.) Mr. Webb does not have a business or personal office in South Carolina, or a South Carolina phone number. (*Id.*) Mr. Webb does not have a bank account or other financial account in South Carolina. (*Id.* ¶ 4.) Mr. Webb has never entered into a contract in South Carolina, or one that was to be performed in South Carolina or governed by South Carolina law. (*Id.* ¶ 5.) Nor has Mr. Webb earned revenue from any business transaction in South Carolina. (*Id.*)

Mr. Webb was CEO of Varsity from its inception in 1974 until March 3, 2016, when Mr. Webb stepped down as CEO and Varsity announced the replacement of a successor CEO. (*Id.* ¶ 8.) While CEO, Mr. Webb's office was in Memphis, Tennessee. (*Id.* ¶ 10.) After stepping down from his role as CEO, Mr. Webb remained as Chairman of the Board for Varsity until July 2018. (*Id.* ¶ 8.) While employed by Varsity, Mr. Webb continued to keep his office in Memphis. (*Id.* ¶ 10.) In December 2020, Mr. Webb left his employment at Varsity. (*Id.* ¶ 8.) Mr. Webb is currently the President of the International Cheer Union, and has his office in Memphis, Tennessee. (*Id.* ¶ 9.)

In the past thirty years, Mr. Webb has visited South Carolina only once, for reasons unrelated to his work in the cheerleading industry. In approximately 2018, Mr. Webb went to

---

[2] The Declaration of Jeff Webb is submitted solely in support of Mr. Webb's Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

South Carolina to attend a political dinner, staying only one night in South Carolina. (Webb Decl. ¶ 6.) Mr. Webb has not otherwise spent time in South Carolina. (*Id.*) Mr. Webb's only other contact with South Carolina has been the single payment to an individual Mr. Webb believes to be a South Carolina resident. (*Id.* ¶ 7.) That payment was made in contemplation of that individual assisting Mr. Webb with authoring a book. (*Id.*) That assistance was never provided, and no further relationship developed between Mr. Webb and the individual. (*Id.*)

### C.       *Substantive Allegations and Factual Background*

At the heart of the Complaint are Plaintiff's allegations of sexual abuse and exploitation that Plaintiff allegedly suffered at the hands of other individual defendants. (*See* Compl. ¶¶ 209-222 (outlining allegations of abuse).) Significantly, those allegations never mention Mr. Webb. Specifically, Plaintiff does not allege that Mr. Webb had any knowledge of any of the alleged abuse or exploitation. Nor does Plaintiff allege that Mr. Webb was ever notified of any of the abuse or exploitation alleged in the Complaint, nor that he failed to report any such conduct. The Complaint also lacks any allegation that Mr. Webb had any authority or exercised oversight over any of the alleged perpetrators of such abuse or exploitation. The Complaint does not, and cannot, allege that Mr. Webb had any involvement whatsoever with the alleged abusive conduct.

Otherwise, the Complaint is rife with superfluous allegations irrelevant to Plaintiff's claims in this suit.[3] Plaintiff makes allegations that are wholly unsubstantiated, patently absurd,[4] and in some cases, simply false with respect to Mr. Webb.[5]

As relevant here, Mr. Webb founded the Universal Cheerleaders Association, the precursor to Varsity, in 1974.  (*See* Compl. ¶ 41.)  With respect to Mr. Webb's role with Varsity, he served as CEO for Varsity until 2016.  On March 3, 2016, Mr. Webb stepped down as CEO of Varsity, and Varsity announced the appointment of a successor CEO.   (*See* Ex. A, Varsity Brands Announces Appointment of Matthew E. Rubel as CEO).[6]  Concurrently, Mr. Webb assumed the position of Chairman of the Board.  (*Id.*)  In 2018, Mr. Webb continued to distance himself from Varsity, and turned his focus to promoting the sport of cheerleading in the international arena, when he stepped down as Chairman of the Board.  As of December 2020, Mr. Webb is no longer

---

[3] *See, e.g.*, Compl. ¶¶ 46 (alleging Varsity controls 80-90% of the cheer market), and ¶ 143 (alleging Mr. Webb developed cheer competitions as a mechanism to "establish dominance in the cheer market").  Here, however, Plaintiff does not allege any antitrust claims against Mr. Webb or any of the other defendants. *See id*. ¶¶ 231-348 (alleging Counts I-XI).

[4] *See, e.g.*, Compl. ¶78 (alleging that Mr. Webb "exercised control over all aspects of All-Star cheer, including rulemaking.").  Such a claim not only lacks any factual support or foundation, but the notion that Mr. Webb exercised control over all aspects of a sport involving an estimated four million athletes is absurd. (Compl. ¶ 36.)

[5] *See, e.g.*, Compl. ¶ 145 (falsely claiming that Mr. Webb "is currently Chairman of the board of directors of Varsity Brands, LLC" and "was previously Varsity's president but resigned in 2020").

[6] In deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference, including "the entirety of documents which Plaintiff[] rel[ies] upon" in his Complaint. *Bothuell v. Grace*, No. 16-11009, 2017 WL 892343, at *3 (E.D. Mich. Feb. 16, 2017). Even if not referenced in a complaint, a court may consider the existence of news articles and press releases as an indication of what information was in the public realm. *Roane County, Tennessee v. Jacobs Eng'g Group, Inc.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 2025613, *4 (E.D. Tenn. Apr. 27, 2020). Since the First Amended Complaint incorporates news articles and public statements to support its allegations (*see* Compl. ¶¶ 109 n5, 110 n6, 147 n7, 101), Mr. Webb requests the Court take judicial notice of the news articles and press releases attached at Exhibits A and B, which were publicly available to Plaintiff.

employed by Varsity.  (*See* Ex. B, Varsity Spirit Founder and Chairman Jeff Webb Transitions to Focus on the Global Development of Cheer).

Plaintiff alleges further that Mr. Webb, "founded Defendant USASF" in 2003.  (*Id.* at 47.)[7] Notably, Plaintiff does not allege, however, that Mr. Webb was ever an officer, director, or employee of the United States All-Star Federation ("USASF").  Nor does he allege any facts that otherwise suggest that Mr. Webb possessed any operational control over USASF.  Indeed, other than referring to a purported meeting in Memphis, Plaintiff does not identify a single fact supporting his conclusory allegation that Mr. Webb founded USASF.  The only entity of which Plaintiff alleges Mr. Webb was an officer, director, or employee is Varsity, falsely alleging that Mr. Webb "is currently Chairman of the board of directors of Varsity Brands, LLC." (*Id.* at ¶ 139.)

## RULE 12(b)(2) MOTION TO DISMISS ARGUMENT

### I.    RULE 12(b)(2) LEGAL STANDARD

In deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence. *Toney v. SSC Sumter E. Operating Co., LLC*, No. CV 3:19-3226-JFA, 2020 WL 12744577 (D.S.C. Apr. 29, 2020) (citing *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)).  If the court decides the jurisdictional challenge without an evidentiary hearing, the plaintiff must make out a prima facie case for personal jurisdiction.  *Id.*  The court construes all relevant pleading allegations in the light most favorable to the plaintiff.  *Id.*  However, the court need not credit conclusory allegations or draw "farfetched inferences." *Id.*

---

[7] Presumably, Plaintiff does not intend to allege that Mr. Webb did so in his individually capacity. In a related lawsuit pending in this Court, with identical counsel, other plaintiffs' alleging abuse have alleged that Mr. Webb allegedly founded USASF "through Defendant Varsity."  *See* First Amended Complaint, *Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*, No. 6:22-cv-02957-HMH, at ¶ 51 (D.S.C. Sept. 15, 2022).

A court may also consider evidence outside the pleadings, including affidavits and other evidentiary materials. *Id.* The court considers uncontroverted allegations in the plaintiff's complaint. *Id.* However, if a defendant's sworn affidavit contradicts allegations in the complaint, the plaintiff cannot rest on those allegations and bears the burden to present evidence showing jurisdiction exists. *Id.*

## II.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. WEBB.

The Court may exercise personal jurisdiction over Mr. Webb if Plaintiff can show that jurisdiction is proper under South Carolina's long-arm statute and that exercise of personal jurisdiction over Mr. Webb would comport with the Due Process Clause. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Where a state's long-arm statute extends to the outer bounds of the Due Process Clause—as South Carolina's does—the court's analysis turns on whether exercise of personal jurisdiction would violate due process. *See ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). Due process requires that a court can exercise personal jurisdiction over a non-resident defendant only if there are "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Thus, Plaintiff must show Mr. Webb established "minimum contacts" in South Carolina. *Id.* "Minimum contacts" requires showing "a sufficient connection between the defendant and the forum [s]tate to make it fair to require defense of the action in the forum." *Id.* (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 91 (1978)).

Personal jurisdiction over an out-of-state defendant may be either general or specific, and Plaintiff must establish that Mr. Webb is subject to either general or specific jurisdiction of this forum. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). General jurisdiction arises form a party's continuous and systematic activities in the forum state.

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 – 15, n.9 (1984). The activities required for general jurisdiction must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). Specific jurisdiction over an out-of-state defendant exists when the lawsuit arises out of or is related to the defendant's contacts with the forum state. *Helicopteros*, at 414, n.8.

Here, Plaintiff does not specify whether he contends the Court can exercise general jurisdiction or personal jurisdiction over Mr. Webb. Regardless of his jurisdictional theory, Plaintiff cannot establish that Mr. Webb is subject to personal jurisdiction under principles of general jurisdiction or specific jurisdiction.

### A.     *The Court does not have general jurisdiction over Mr. Webb.*

"When the plaintiff's cause of action does not arise from the defendant's contacts with the forum state so as to provide 'specific jurisdiction' for the claim based on the 'relationship among the defendant, the forum, and the litigation,' . . . 'general jurisdiction' may nevertheless be asserted over a defendant whose activities in the forum state have been 'continuous and systematic.'" *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citing *Helicopteros*, 466 U.S. at 414). "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *Id.* at 623-24 (citing 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067, at 295-98 (1987)). General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are "so constant and pervasive as to render [him] essentially at home in the forum State." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131-32 (4th Cir. 2020). An individual is "at home" for the purposes of general jurisdiction in the individual's domicile. *Id.* at 132.

General jurisdiction does not attach here because Mr. Webb is not "at home" in South Carolina. Rather, Mr. Webb is domiciled in Tennessee, where he maintains his residence and owns real property. *See* (Webb Decl. ¶ 1.) Mr. Webb does not have such "constant and pervasive" contacts with South Carolina to justify the exercise of general jurisdiction. *See Fidrych*, 952 F.3d at 132. Nor does Plaintiff allege Mr. Webb maintains such "continuous and systemic contacts" with South Carolina or that his claims arise from Mr. Webb's contacts with South Carolina. In fact, Plaintiff fails to allege Mr. Webb undertook *any* act or omission within South Carolina. *See* (Compl. ¶ 19 (recognizing Mr. Webb is a citizen of Memphis, Tennessee); ¶¶ 47, 49 (alleging Webb founded USASF and proposed a merger between USASF and NACCC which took place in Tennessee)). As such, Plaintiff wholly fails to make out a prima facie case for general jurisdiction as to Mr. Webb.

### B.     *The Court does not have specific jurisdiction over Mr. Webb*.

Since Plaintiff cannot rely on general jurisdiction, the Court will have jurisdiction over Mr. Webb only if Plaintiff can establish a prima facie case for specific jurisdiction. Plaintiff cannot do so. Specific jurisdiction applies where the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Fidrych*, 952 F.3d at 138 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thus, the suit must arise out of the defendant's contacts with the forum state. *Id.*; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum state."). "In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider '(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Colson*

*v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 568 (D.S.C. 2011) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). A defendant's unconnected activities in the forum are insufficient to support specific jurisdiction. *Fidrych*, 952 F.3d at 138. "[T]he connection between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. (emphasis in original).

Plaintiff cannot claim that Mr. Webb has "purposefully availed [himself] of the privilege of conducting activities in South Carolina." *See Rice v. M-E-C Co.*, No. 2:17-CV-1274-PMD, 2017 WL 4812590, at **3-4 (D.S.C. Oct. 25, 2017) (listing factors to determine whether a defendant purposefully availed himself of the forum state). Mr. Webb does not maintain an office in South Carolina. (Webb Decl. ¶ 3.) Nor has Mr. Webb reached into South Carolina to solicit or initiate business in South Carolina, much less engaged in significant or long-term business activities in the state. (*Id.* ¶ 5.) Mr. Webb also has never entered into any contract in South Carolina, or a contract that was intended to be governed by South Carolina law or required performance in South Carolina. (*Id.*) In short, Plaintiff does not, and cannot, identify *any* nexus between Mr. Webb and South Carolina. *See Fidrych*, 952 F.3d at 143 ("the connection between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum State.") (emphasis in original).

Nor do Plaintiff's claims arise out of any activities that Mr. Webb directed towards South Carolina. The Complaint contains almost no alleged actions attributed to Mr. Webb individually, and those that do relate to Mr. Webb do not establish any connection between Mr. Webb and South Carolina—substantial or otherwise. Plaintiff alleges that:

- Mr. Webb, "founded Defendant USASF" and "mandated that All-Star athletes . . . purchase USASF membership as a requirement to competing at Varsity-sponsored events; and"

10

- Mr. Webb "proposed a merger [between USASF and the National All-Star Cheerleading Coaches Congress], which informally took place in his board room at Varsity headquarters in Memphis."[8]

(Compl. ¶¶ 47-49.) Even if the above-listed allegations were relevant to and supported Plaintiff's claims in this case, and they do not, none of them support personal jurisdiction over Mr. Webb. Plaintiff does not, and cannot allege that any of this alleged conduct occurred in South Carolina.

Mr. Webb's prior, and limited, contact with South Carolina cannot form the basis for personal jurisdiction for this lawsuit. His attendance at a dinner in South Carolina, for a single night, is wholly unrelated to any of the allegations or causes of actions in the Complaint. *See* (Webb Decl. ¶ 6.) Likewise, Mr. Webb's nominal payment to a single South Carolina resident for assistance in writing a book, particularly where that assistance was never provided, does not relate to the allegations in the Complaint. (*Id.* at ¶ 7). These contacts certainly would not give Mr. Webb any reason to believe that he would be dragged into a court in South Carolina for a lawsuit totally unrelated to his visit to the state or the authorship of a book. Thus, the exercise of personal jurisdiction over Mr. Webb in this case in South Carolina would be constitutionally unreasonable.

Because Mr. Webb has had almost no contact with South Carolina whatsoever, and because this lawsuit does not arise out of *any* contact that Mr. Webb had with South Carolina, the Court does not have specific jurisdiction over Mr. Webb.

**C.    *Mr. Webb's roles with Varsity cannot serve as a basis for personal jurisdiction.***

The vast majority of the allegations in the Complaint relating to Mr. Webb revolve solely around his alleged roles with Varsity. Mr. Webb's roles with Varsity cannot serve as a basis for the Court to exercise personal jurisdiction over Mr. Webb.

---

[8] The other allegations in the Complaint directed towards Mr. Webb relate entirely to his role in founding Varsity and acting as an officer or director of Varsity.

Notably, the fiduciary shield doctrine provides that specific jurisdiction cannot rest against a non-resident based solely on the non-resident's role as a corporate officer, director, or board member. *Gault v. Thacher*, 367 F. Supp. 3d 469, 476 (D.S.C. 2018). Instead, Plaintiff must show some "direct, personal involvement by the corporate officer in some decision or action that is causally related to the plaintiff's injury." *Magic Toyota, Inc. v. Se. Toyota Distributors, Inc.*, 784 F. Supp. 306, 315 (D.S.C. 1992). Personal involvement exists where the corporate officer is "the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Id.* Plaintiff must show Mr. Webb had some direct, personal involvement in some decision or action which is causally related to Plaintiff's alleged injuries. *See Rice*, 2017 WL 4812590, at *4.

In *Rice*, the District of South Carolina determined that allegations against a Human Resources supervisor were insufficient to circumvent the fiduciary shield doctrine. *Id.* at *6. There, the plaintiff failed to allege the supervisor was in any way personally involved in any decision that causally related to the injury alleged. *Id.* Periodic communications with the corporate office in the forum state, including a phone conversation with the plaintiff, were insufficient. *Id.* The court also declined to attach personal jurisdiction to corporate board members where the plaintiff alleged the board members had the power to take actions affecting the plaintiff, but failed to allege the board members had actually taken any such action. *Id.* at *7 (citing to *Salley v. Heartland–Charleston of Hanahan, SC, LLC*, No. 2:10-cv-791-DCN, 2010 WL 5136211, at *5 (D.S.C. Dec. 10, 2010) (explaining that South Carolina courts look to whether an entity has actually used its power to purposefully act within the state, rather than whether it could have acted, and holding that defendant's ability to control a budget was insufficient to establish minimum

contacts where the plaintiff had not alleged facts that would support a finding that defendant actually did control the budget)).

In contrast, in the same case, the court found personal jurisdiction attached to a board member and shareholder of the corporate entity where the plaintiff alleged the board member (1) made in-person contact with the plaintiff in the forum state; (2) emailed the plaintiff to terminate his employment; (3) refused to return the plaintiff's calls; (4) changed the locks on the corporate office in the forum and prevented the plaintiff from retrieving his personal belongings from the office; (5) personally made the decision to withhold paychecks and bonuses from the plaintiff; and (6) personally instructed other employees to cease lease payments on the plaintiff's residence in the forum. *Id*. at *8.

Here, Plaintiff does not allege, nor can he show, that Mr. Webb undertook any personal involvement in the actions Plaintiff contends caused him injuries. Although Plaintiff alleges Mr. Webb had the power to exercise control over Varsity (which Mr. Webb contests), Plaintiff fails to allege any facts asserting Mr. Webb actually exercised that power by personally making any decisions, or personally undertaking any action in South Carolina. To the contrary, Plaintiff appears to allege that Mr. Webb exercised his control over Varsity, if at all, in *Tennessee*, where Varsity is headquartered. *See* (Compl. ¶ 50) (alleging Mr. Webb proposed a merger between USASF and NACCC which "informally took place in his board room in Memphis[.]").

Consequently, Plaintiff cannot establish personal jurisdiction over Mr. Webb solely because of his former roles as an officer and director of Varsity.

### D.    *Section 2255's and RICO's nationwide service of process provisions do not support personal jurisdiction over Mr. Webb.*

Plaintiff asserts claims against Mr. Webb under the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, 18 U.S.C. § 2255, and the Racketeer Influenced

Corrupt Organizations Act, 18 U.S.C. § 1962(c),(d).  Both of these statutes contain provisions

providing for nationwide service of process.  18 U.S.C. § 2255(c)(2); 18 U.S.C. § 1965.   The

Fourth Circuit construes these nationwide service of process provisions as also providing for

nationwide personal jurisdiction over defendants.  *See, e.g.*, *ESAB Grp., Inc.*, 126 F.3d at 128

(finding the RICO statute's service of process provision provides for nationwide personal

jurisdiction); *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,

791 F.3d 436, 443 (4th Cir. 2015) (construing ERISA's nationwide service of process provision

as providing for nationwide personal jurisdiction).  Here, the Court should not rely upon the

nationwide service of process provisions under Section 2255 or RICO as a basis for exercising

personal jurisdiction over Mr. Webb.

Although the Fourth Circuit has not addressed nationwide personal jurisdiction under

Section 2255, it has addressed nationwide personal jurisdiction under for civil RICO claims.  A

defendant can defeat RICO's nationwide personal jurisdiction where the "'RICO claim is not

colorable, because it is wholly immaterial or insubstantial.'"  *See, e.g.*, *Johnson v. PennyMac Loan*

*Services, LLC*, No. 4:21-cv-0815-TLW-TER, 2022 WL 410078, at *3 (D.S.C. Jan. 19, 2022)

(quoting *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 549 (E.D. Va. 2009)).  A

frivolous RICO claim is not colorable.  *Id.*; *see also Becker v. Noe*, 2019 WL 1415483, at *17 (D.

Md. March 27, 2019) ("A RICO claim is not colorable if it is 'implausible, insubstantial, or

frivolous.'") (internal quotations omitted).  Because courts in the Fourth Circuit have relied upon

this same colorable claim standard when evaluating challenges to personal jurisdiction under other

federal statutes with nationwide service of process provisions, the same standard should apply to

Plaintiff's Section 2255 claim.  *See, e.g.*, *Hall v. Tyco Intern., Ltd.*, 223 F.R.D. 219, 228 (M.D.N.C.

14

2004) (applying the "colorable claim" standard to evaluating application of nationwide service of process provisions under the Securities and Exchange Act and ERISA).

         1.         *Plaintiff's RICO claim is not colorable as to Mr. Webb.*

Plaintiff's RICO claim is implausible and frivolous and, as a result, cannot serve as a basis for the Court to exercise personal jurisdiction over Mr. Webb.  The Court determines whether a claim is colorable under RICO by considering whether Plaintiff alleges: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, as well as (5) injury in the plaintiff's business or property (6) by reason of the RICO violation."  *Swarey v. Desert Capital REIT, Inc.*, 2012 WL 4208057, at *8 (D. Md. Sept. 20, 2012) (citations and quotations omitted).  As explained below, Plaintiff has wholly failed to allege any facts that could plausibly state a claim against Mr. Webb for RICO violations.  *See infra* (Part V.)  Plaintiff's RICO claim against Mr. Webb is so frivolous and lacking in merit that it cannot be deemed colorable.

Here, Plaintiff does not even allege that Mr. Webb joined in any enterprise.  *See* (Compl. ¶¶ 239-240.) (identifying Defendants *other than Mr. Webb* as alleged members of a RICO enterprise).  Plaintiff's failure to even allege that Mr. Webb was a participant in a RICO enterprise renders his RICO claim against him not colorable.  The Complaint makes clear that the only reason that Plaintiff included Mr. Webb as a defendant in this case is because he founded Varsity and served as its CEO.  However, Mr. Webb ceased to be Varsity's CEO in March 2016, which is well before the accrual of the applicable statute of limitations for his RICO claim.  (Webb Decl. ¶ 8); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (identifying a four-year statute of limitations for civil RICO claims).  Plaintiff does not otherwise identify any conduct by Mr. Webb within the statutory period that could in any way support a RICO claim against Mr. Webb.  His failure even to make allegations against Mr. Webb demonstrates the frivolity and implausibility of Plaintiff's RICO claim against him.

2.    _Plaintiff's Section 2255 claim is not colorable as to Mr. Webb._

Plaintiff's claim under Section 2255 is also implausible and frivolous rendering it not colorable and an improper basis for the Court to exercise personal jurisdiction over Mr. Webb. To prevail under Section 2255, Plaintiff must prove by a preponderance of the evidence that the defendant violated at least one of the fourteen underlying criminal statutes—each of which criminalizes the sexual abuse or exploitation of children. *Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005); *Doe v. Liberatore*, 478 F. Supp. 2d 742, 756 (M.D. Pa. 2007).

Plaintiff's Section 2255 claim is implausible and frivolous because Mr. Webb is not a proper defendant for his Section 2255 claim. As stated below, Plaintiff does not, and cannot, allege that Mr. Webb violated any of the fourteen criminal statutes for which Section 2255 provides relief. *See infra* (Part IV.) Nor can Plaintiff allege that Mr. Webb aided or abetted any other person's violation of the underlying statutes. (*Id.*) And, because there is no form of vicarious liability for Section 2255 claims, Plaintiff does not have any arguable basis to assert a Section 2255 claim against Mr. Webb. (*Id.*) Consequently, Plaintiff's Section 2255 claim is not colorable and cannot serve as a basis for the Court to exercise personal jurisdiction over Mr. Webb.

Because Plaintiff's Section 2255 and RICO claims are not colorable, neither can serve as a basis to exercise personal jurisdiction over Mr. Webb for any other claims, including Plaintiff's gross negligence and civil conspiracy claims.[9]

## **RULE 12(b)(6) MOTION TO DISMISS ARGUMENT**

In the Complaint, Plaintiff asserts twelve causes of action against thirteen named Defendants. Only four of the twelve causes of action have been asserted against Mr. Webb—a

---

[9] Even if the Section 2255 and/or RICO claims were colorable, which they are not, the claims should still be dismissed pursuant to Rule 12(b)(6), as argued below. Likewise, the gross negligence and civil conspiracy claims should be dismissed for lack of personal jurisdiction.

claim under the Child Abuse Victims' Rights Act, a civil RICO claim, and tort claims for gross negligence and civil conspiracy. As detailed below, each of those causes of action are insufficiently pled as to Mr. Webb and suffer from fatal flaws requiring their dismissal with prejudice.

## III.    RULE 12(b)(6) LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558–59, 570 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* "A court need not 'accept the legal conclusions drawn from the facts' or 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.' *Bills v. Virginia Dep't of Educ.*, No. 6:21-CV-51, 2022 WL 1811383, at *2 (W.D. Va. June 2, 2022) (quoting *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 768 (4th Cir. 2011)).

## IV.    PLAINTIFF'S CLAIMS UNDER 18 U.S.C. § 2255 SHOULD BE DISMISSED.

Plaintiff's first cause of action is entirely inapplicable to Mr. Webb and should be dismissed. Plaintiff asserts a claim against Mr. Webb under the Child Abuse Victims' Rights Act, which provides a civil remedy for any individual who, as a minor, was a victim and suffered injury because of a defendant's violation of any one of fourteen separate criminal statutes. 18 U.S.C. § 2255(a). Each of the statutes listed in Section 2255 prohibit conduct involving the sexual abuse, molestation, or exploitation of children. *See* 18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2242, 2243, 2252, 2251A, 2252, 2252A, 2260, 2421, and 2423. To prevail under Section 2255, the proponent must prove by a preponderance of the evidence that the defendant violated at least one of the underlying listed criminal statutes. *Smith v. Husband*, 376 F. Supp. 2d at 613; *Doe v. Liberatore*,

478 F. Supp. 2d 742, 756 (M.D. Pa. 2007).  Because Plaintiff cannot meet this burden against Mr. Webb, his Section 2255 claim against him must be dismissed.

Plaintiff does not, and cannot, allege that Mr. Webb committed any act in violation of any of the predicate criminal statutes.  Indeed, Plaintiff identifies other individual Defendants as the alleged perpetrators of the abusive acts in violation of the predicate criminal statutes.  (Compl. at ¶ 214-229) (detailing the alleged abusive acts and identifying the alleged abusers).)  As such, Plaintiff has failed to make a prima facie claim under Section 2255 against Mr. Webb.

To the extent Plaintiff claims that Mr. Webb is secondarily liable under Section 2255 as a result of the alleged criminal acts of others, his Section 2255 claim still fails.  The only theory under which secondary liability can potentially attach under Section 2255, is with respect to aiding and abetting.  *See Liberatore*, 478 F. Supp. 2d at 756 ("[I]f one has aided or abetted another in violating one of the statutes listed in section 2255, then he himself has committed an act indictable under that listed statute . . . [and] he is liable to a plaintiff under section 2255."); *see also Doe v. City of Gauley Bridge*, No. 2:21-cv-00491, 2022 WL 3587827, at *13 (S.D.W.V. Aug. 22, 2022) ("while some courts have found that secondary liability may attach under [Section 2255], they did so with respect to aiding and abetting—which requires intentionally helping the tortfeasor—rather than vicarious liability.") (citing *Liberatore*, 478 F. Supp. 2d at 756 and other cases).  To make a claim for aiding and abetting under Section 2255(a), a proponent must show that "(1) the substantive offense has been committed; (2) the defendant knew the offense was being committed; and (3) the defendant acted with the intent to facilitate it." *Id.* "[A]cting with intent to facilitate the substantive offense requires that one acted with the 'intent to help those involved with a certain crime." *Id.*

In *Doe v. Liberatore*, a court determined that no liability under Section 2255 could lie where there was no evidence that the defendants desired for the substantive offenses to occur, or had the specific criminal intent to commit the substantive offenses. 478 F. Supp. 2d at 756-57. The court also noted that there was no evidence the defendants "actively participated" in any manner to assist with the substantive offenses. *Id.* at 757. The inference of knowledge, general suspicion, or "indifference to the truth" were insufficient to support a claim under Section 2255(a). *Id.* at 756.

In his 62-page Complaint, Plaintiff does not allege that Mr. Webb had any knowledge of any of the substantive offenses alleged. Indeed, he does not allege a single fact suggesting that Mr. Webb could, or should, have known of any of the alleged substantive offenses. Likewise, the Complaint lacks any allegation that Mr. Webb intended to facilitate any criminal conduct, much less that he acted with an intent to help any individuals who were allegedly abusing minors. Because Plaintiff cannot allege that Mr. Webb aided and abetted any of the accused abusers' allegedly criminal conduct, Mr. Webb cannot be held liable under Section 2255 pursuant to an aiding and abetting theory.

Finally, Plaintiff cannot argue that Mr. Webb is vicariously liable for any act committed by others in violation of Section 2255 or its underlying statutes. Courts considering the issue have found that Section 2255 does not provide for vicarious liability or liability under a theory of *respondeat superior*. *See, e.g. City of Gauley Bridge*, 2022 WL 3587827 at *13 (dismissing vicarious liability claim under Section 2255). Thus, to the extent Plaintiff intends to claim that Mr. Webb is vicariously liable for others' violations of Section 2255 and the underlying statutes, any such claim fails as a matter of law.

Because Plaintiff does not, and cannot, allege that Mr. Webb committed any of the predicate criminal acts, or aided and abetted any individuals who did commit such criminal acts, Plaintiff's Section 2255 claim against Mr. Webb should be dismissed with prejudice.

## V.     PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED.

Plaintiff's civil RICO claim is premised upon his outlandish and false allegation that Defendants participated in an enterprise for the purpose of "exposing him to illegal sexual abuse and exploitation of children while assuring his parents he was particularly safe in order to take their money." (Compl. ¶ 241.) However, Plaintiff has failed to allege facts suggesting the existence of any such enterprise, or that Mr. Webb joined an enterprise. In fact, Plaintiff alleges only that that Mr. Webb and his former employer, Varsity, did nothing but operate Varsity's daily business, which Plaintiff acknowledges "is not in and of itself illicit." (RICO Statement at p. 12.) Moreover, even if Plaintiff had so alleged, his RICO claim is nonetheless fatally flawed and fails as a matter of law.

To prevail on a RICO claim, Plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Bills v. Virginia Dep't of Educ.*, No. 6:21-CV-51, 2022 WL 1811383, at *7 (W.D. Va. June 2, 2022). Plaintiff's RICO claim against Mr. Webb fails because Plaintiff has not shown that he has suffered an injury that gives him standing to assert a RICO claim against Mr. Webb. Furthermore, even if Plaintiff had standing, he has failed to allege facts establishing the elements of a civil RICO claim.

### A.     *Plaintiff lacks standing to assert his RICO claim.*

As an initial matter, Plaintiff's RICO claim should be dismissed because Plaintiff lacks standing to assert his claim. A RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Estate of Valentine by & through Grate v. South Carolina*, No. CV 3:18-00895-JFA,

2019 WL 8324709, *7 (D.S.C. Aug. 6, 2019).   Thus, Plaintiff must "make two closely related showings: (1) that [she] suffered injury to [her] business or property; and (2) that this injury was caused by the predicate acts that make up the [RICO violation]." *Lifschultz Fast Freight, Inc. v. Cons. Freightways Corp. of Delaware*, 805 F. Supp. 1277, 1288-89 (D.S.C. 1992).  Plaintiff fails to make either of these two required showings and, as a result, his RICO claim against Mr. Webb must be dismissed.

First, Plaintiff has not alleged that he has suffered injury to his business or property. Allegations of personal injuries and the pecuniary losses incurred therefrom do not qualify as injury to "business or property." *Bowen v. Adidas Am., Inc.*, 541 F. Supp. 3d 670, 676 (D.S.C. 2021).  The Complaint makes clear that Plaintiff's claims and grievances all stem from personal injuries—the alleged abuse suffered at the hands of individuals other than Mr. Webb. *See* (Compl. ¶¶ 209-222.) (detailing allegations of abuse); *id.* ¶ 231 (stating Plaintiff "has suffered *personal injuries*" as a result of the alleged acts) (emphasis added).)   Indeed, Plaintiff alleges that the purpose of the supposed enterprise was to expose minor athletes to illegal sexual abuse and exploitation.  (*Id.* ¶ 241.)  Because such harm would constitute personal injuries, and not injury to business or property, Plaintiff's RICO claim is improper.

Plaintiff's transparent attempt to circumvent this limitation by recasting his alleged harm as injury to his business or property does not rescue the RICO claim.  Plaintiff alleges he was enticed into competitive cheerleading in order to "obtain social media fame which he could monetize," obtain college scholarships, enter the cheer coaching profession, become a gym owner, or become an event promotor.  (Compl. ¶ 252.)  Plaintiff complains further that he has a property interest in the membership dues paid to participate in competitive cheer. (Compl. ¶ 252.)  As the Complaint makes clear, these purported losses all stem from Plaintiff's allegations of abuse and,

thus, constitute pecuniary losses that are incurred from personal injuries. (Compl. ¶ 255 ("But for the fraudulent assurances . . . *the abuse* would not have occurred *causing the injuries described above*.") (emphasis added); *see* RICO Statement at p. 48-49 (same).) Plaintiff's alleged pecuniary losses do not qualify as injury to Plaintiff's "business or property." *See Bowen*, 541 F. Supp. 3d at 676.

Even if any of Plaintiff's alleged injuries could plausibly qualify as harm to his business or property, Plaintiff nonetheless lacks standing to bring his RICO claims because the purported RICO violations did not proximately cause the alleged injuries. There must be "some direct relation between the injury asserted and the injurious conduct alleged," and that link must not be too remote. *Id.* (quoting *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)). That is, "the violation of RICO [must] be the proximate cause of the injury." *Lifschultz*, 805 F. Supp. at 1291 (citing *Holmes*, 503 U.S. at 268). A claimed injury "to mere expectancy interests or to an intangible property interest" does not support RICO standing. *Bowen*, 541 F. Supp. 3d at 677.

Here, Plaintiff's allegations of damages are too remote and speculative to support RICO standing. Plaintiff's expectation of future social media fame, college scholarships, or professional coaching or business interests are too intangible and speculative to support RICO standing. *See Bowen*, 541 F. Supp. 3d at 677. The Complaint also lacks any allegations that the alleged predicate acts caused Plaintiff to pay any membership dues. *Lifschultz*, 805 F. Supp. at 1291 ("The plaintiff must show that . . . [the] injury was caused by the predicate acts . . ."); *see also Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *25 (D. Colo. 2019) (finding that membership fees paid to USA Tae Kwon Do did not support RICO standing where the payment of the dues were not the result of the underlying predicate acts). Plaintiff also fails to sufficiently allege a direct connection between Plaintiff's alleged pecuniary losses and

expectation damages and any conduct by Mr. Webb.  Indeed, the Complaint lacks any factual allegations identifying any wrongful conduct by Mr. Webb whatsoever.  Consequently, Plaintiff fails to allege that any predicate acts caused damages to his business or property.

Because Plaintiff has not alleged an injury to his business or property, or that RICO violations constitute the proximate cause of any such injury, Plaintiff lacks standing to assert any RICO claims.  Consequently, Plaintiff's claims should be dismissed with prejudice.

### B.     *Plaintiff fails to allege the existence of any RICO "enterprise."*

Under RICO, an "enterprise" requires an ongoing organization with associates functioning as a unit for a common purpose, and the enterprise must be separate and apart from the pattern of activity in which it engages.  *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 537 (D. Md. 2019).  "Importantly, a RICO enterprise requires the existence of collaboration or agreement between the members of the enterprise."  *Id.* (citing *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009)).  To survive a motion to dismiss, Plaintiff must sufficiently allege facts as to "how, when, or where this agreement actually occurred or who made what communications to bring the agreement about."  *Id*.

Here, Plaintiff conclusorily states "the Varsity Defendants, Defendant USASF, Defendant Rockstar, Defendant Scott Foster, and Defendant Kathy Foster formed an association-in-fact Enterprise" (Compl. ¶ 239) with a "common purpose of recklessly, intentionally, and willfully endangering the Plaintiff" (Compl. ¶ 241), and that the Defendants acted in concert with the enterprise by "engaging in misleading and fraudulent messaging to children and their families" (Compl. ¶ 242).  Plaintiff also alleges that Defendants "acted in concert" with the stated purpose of the enterprise. (Compl. ¶ 245.)  Notably, however, Plaintiff does not allege that Mr. Webb formed any association in fact or otherwise participated in the alleged enterprise.  (*See* Compl. ¶ 239 (alleging certain Defendants entered into an enterprise, but not Mr. Webb); ¶ 4 n.2 (defining

"Varsity Defendants" as "Varsity Brands, LLC, Varsity Spirit, LLC, [and] Varsity Brands Holding company, Inc.").)[10]

Aside from conclusory allegations that multiple Defendants other than Mr. Webb formed an enterprise, Plaintiff does not allege any actual collaboration or agreement among those Defendants. Such conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678. To the extent Plaintiff intended to include Mr. Webb among those Defendants, he does not allege any facts suggesting that he agreed or collaborated with the other Defendants for the stated common purpose. Indeed, Plaintiff fails to allege any facts that show *how, when or where* Mr. Webb – or any of the Defendants – entered into a purported agreement, or what communications or actions brought such an agreement about. *See Rojas*, 425 F. Supp. 3d at 537 (dismissing a RICO claim where the plaintiffs conclusorily alleged an agreement but did not allege any facts showing such an agreement).

To establish the existence of a RICO enterprise, Plaintiff must also allege that the Defendants did more than just operate their own affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs."). Here, Plaintiff fails to allege any facts establishing that Mr. Webb or any other Defendant acted on behalf of the enterprise, rather than his or its own interest, or directed the enterprise's affairs. *Id.*; *see also United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) (dismissing a RICO claim where alleged conduct "[was] entirely consistent with [the defendants]

---

[10] *See also* Compl. ¶ 4 (defining "Defendants" to include Scott Foster, Kathy Foster, Rockstar Greenville, other Rockstar affiliated gyms, Varsity Brands, LLC, Varsity Brands Holding Company, Varsity Spirit, LLC, Bain Capital, L.P. and their governing bodies, the United States All-Star Federation, and USA Cheer). Plaintiff does not include Mr. Webb in the definition of "Defendants."

each going about [their] own business.").  Here, Plaintiff does not allege that Mr. Webb did anything other than go about his own business—that is, founded a cheer company that put on cheer competition events, hosted cheer camps, and sold cheer apparel.  As Plaintiff acknowledges, Mr. Webb's daily business was "not in and of itself illicit."  (RICO Statement at p. 12.)

Because Plaintiff has not alleged the existence of a RICO enterprise, or that Mr. Webb participated as a member of any such enterprise, his RICO claim against Mr. Webb should be dismissed.

**C.**    ***Plaintiff fails to allege Mr. Webb participated in any pattern of racketeering activity.***

Even if Plaintiff had standing to assert his RICO claim, which he does not, Plaintiff's claim fails because he does not adequately allege that Mr. Webb participated in any conduct constituting a "pattern" of "racketeering activity."  A pattern of racketeering activity requires at least two predicate acts within a ten-year period.  *Lifschultz Fast Freight, Inc.*, 805 F. Supp. At 1288-89. Here, Plaintiff alleges Defendants engaged in mail fraud and wire fraud.  (*See* Compl. ¶¶ 208, 238.) Plaintiff further contends that the same sexual abuse and exploitation statutes that form the basis for his Section 2255 claim also constitute predicate acts to support his RICO claims. (Compl. ¶ 245.)

For the same reasons that Plaintiff cannot maintain his Section 2255 claim against Mr. Webb, his RICO claim, which depends upon the same underlying offenses as his Section 2255 claim, fails and must be dismissed.  Plaintiff has not, and cannot, allege that Mr. Webb committed any of the underlying predicate offenses, aided or abetted those offenses, or had any knowledge of their occurrence.  *See supra* Part II.A.  Therefore, Mr. Webb could not have committed a predicate act, or entered into a conspiracy in which he agreed that others would do so.  Consequently, to the

extent Plaintiff relies upon any of the sexual abuse and exploitation statutes as predicate offenses for his RICO claim against Mr. Webb, such claim fails and must be dismissed.

Plaintiff's reliance on wire fraud and mail fraud statutes as predicate offenses for his RICO claim against Mr. Webb are also fatally flawed. Allegations of wire fraud or mail fraud as predicate acts supporting a RICO claim must satisfy the heightened pleading standards of Rule 9(b). *Jones v. Ram Med., Inc.*, 807 F. Supp. 2d 501, 513 (D.S.C. 2011). To satisfy Rule 9(b), Plaintiff must plead sufficient facts demonstrating "the time, place, and content of the alleged fraud." *Id*.

Notably, all of the particular allegations supporting Plaintiff's mail and wire fraud schemes point to conduct taken, or not taken, by Defendants other than Mr. Webb. Plaintiff does not identify a single statement, made via mail or wire, attributable to Mr. Webb that he alleges was fraudulent. Instead, Plaintiff points to messaging disseminated by Defendants other than Mr. Webb through their website, social media, and via email as the sole basis for both fraud claims. (*See* Compl. ¶ 251(a) ("USASF Athlete Protection Messaging . . . ");251(c) ("social media posts and images either promoted by or shared by Defendants"); 251(d) (regarding billing Plaintiff's USASF membership renewal); 251(e) ("USASF's website . . . "); 251(f) ("USASF .also falsely claimed . . ."); 251(g) ("USASF disseminated . . ."); 251(h) ("USASF continued to provide messaging . . ."); 251(i) ("USASF shifted . . ."); 251(j) ("USASF's athlete protection messaging . . ."); 251(k) ("USASF and USA Cheer codes of conduct and other policy statements . . .").) Plaintiff's RICO Case Statement similarly refers exclusively to statements by Defendants other than Mr. Webb as the purportedly fraudulent statements that constitute predicate acts of wire fraud or mail fraud. *See* (RICO Statement at pp. 28-33) (listing website and social media postings from USASF and Varsity). Moreover, the alleged statements identified in the RICO Case Statement

26

were made *after* Mr. Webb was no longer an officer or employee of Varsity. *See id.* (identifying current website statements and social media posts made in 2022). Such alleged statements cannot support Plaintiff's RICO claim against Mr. Webb.

Nowhere in Plaintiff's 62-page Complaint does he allege any purportedly fraudulent statements made by Mr. Webb. The only references to Mr. Webb as participating in any purported "predicate act" is in Plaintiff's RICO Case Statement in which he alleges (without any factual support) that Mr. Webb created Defendant USASF and that he "formed USA Cheer." (RICO Statement at p. 18-19.) Even if those allegations are taken as true, such conduct does not constitute an act of mail or wire fraud, or any other alleged predicate act, and cannot support Plaintiff's RICO claim against Mr. Webb.

Plaintiff also cannot prevail against Mr. Webb on the grounds that he participated in a RICO conspiracy. To prevail on a RICO conspiracy claim against Mr. Webb, Plaintiff must prove "that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *U.S. v. Cornell*, 780 F.3d 616, 623 (4th Cir. 2015) (internal citations and quotations omitted). Here, Plaintiff has not alleged any facts suggesting that Mr. Webb made any agreements with any Defendants, much less that he knowingly and willfully agreed that other Defendants would commit mail or wire fraud. Nor does Plaintiff allege any facts showing Mr. Webb agreed to the overall objective of the alleged conspiracy. *See Id.* at 624 (explaining that the members of the enterprise must "agree to pursue the same criminal objective."). Plaintiff does not allege that Mr. Webb made any agreement with other Defendants, let alone that he agreed to a criminal objective. Accordingly, Plaintiff fails to plead with particularity that Mr. Webb participated in at least two predicate acts, or in fact participated in any

27

conspiracy in violation of RICO.  Therefore, Plaintiff's RICO claims against Mr. Webb should be dismissed with prejudice.

## VI.    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED.

Plaintiff also asserts two tort claims against Mr. Webb—gross negligence and civil conspiracy.  Like his Section 2255 and RICO claims, Plaintiff fails to allege any facts that support his gross negligence and civil conspiracy claims against Mr. Webb.  Plaintiff does not allege any conduct, or omissions, undertaken by Mr. Webb to support his gross negligence and civil conspiracy claims.  Nor does Plaintiff allege that Mr. Webb owes any special duty to her, much less that he breached any such duty.  Finally, to the extent Mr. Webb was acting in his role as an officer or director of Varsity, as Plaintiff contends, Mr. Webb cannot be liable for any torts allegedly committed by Varsity.  Plaintiff's tort claims for gross negligence and civil conspiracy as to Mr. Webb should be dismissed with prejudice.

### A.    *Plaintiff's gross negligence claim should be dismissed.*

A claim for gross negligence under South Carolina law requires pleading the same elements as a claim for negligence, with the primary difference being that gross negligence requires a finding that the defendant was not only negligent but failed to exercise even slight care.  *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 682 (D.S.C. 2021).  A negligence claim requires proving the defendant owed a legal duty of care, that the defendant breached that duty through a negligent act or omission, and that the negligent act or omission proximately caused damages to the plaintiff.  *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163-64 (S.C. 2012).  "'Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do.' In other words, '[i]t is the

failure to exercise slight care.'" *Rainey v. S.C. Dep't of Soc. Services*, 863 S.E.2d 470, 474 (Ct. App. 2021), reh'g denied (Oct. 21, 2021), cert. denied (Sept. 7, 2022).[11]

Here, Plaintiff wholly fails to allege facts supporting the necessary elements of a gross negligence claim against Mr. Webb.  Principally, he fails to allege that Mr. Webb owed him any legal duty, or that he breached any such duty through a negligent act or omission.

### 1.    *Plaintiff fails to allege Mr. Webb owes him any independent duty.*

Plaintiff's gross negligence claim fails because he has not alleged that Mr. Webb owed any duty to her, and he does not identify any statute or other basis for imposing a duty on Mr. Webb. Whether a duty exists is a question of law for the Court.  *In re Blackbaud*, 567 F. Supp. 3d at 679. An affirmative duty can be created by "statute, contract, relationship, status, property interest, or some other special circumstance."  *Id.* at 680.  A statutory duty exists where the plaintiff demonstrates the essential purpose of the statute is to protect from the type of harm suffered and that the plaintiff is a member of the class of persons intended to be protected by the statute. *Trivelas v. S.C. DOT*, 558 S.E.2d 271, 275 (Ct. App. 2001).  The relationship between the parties determines whether a duty is recognized in any particular context.  *In re Blackbaud*, 567 F. Supp. 3d at 680.  A duty may also be voluntarily undertaken.  *Id.*

Because the Complaint does not identify any statute imposing a duty upon Mr. Webb, Plaintiff must identify some other basis for imposing a duty that could support his gross negligence claim, such as through a relationship or other special circumstance.  Plaintiff does not allege any facts showing a relationship existed between Mr. Webb, in his individual capacity, and Plaintiff. *See In re Blackbaud*, 567 F. Supp. 3d at 680.  Nor does Plaintiff state any facts showing that Mr.

---

[11] South Carolina law does not provide for recovery of treble damages or punitive damages under gross negligence claims. *Solanki v. Wal-Mart Store No. 2806*, 763 S.E.2d 615, 619 (Ct. App. 2014).

Webb undertook an affirmative duty.   Instead, Plaintiff conclusorily alleges that Defendants, collectively, undertook such a duty.  (*See* Compl. ¶ 284 ("Defendants specifically undertook a duty to ensure that reputation for trust and safety was earned . . . .").)  Plaintiff does not state that Mr. Webb undertook any such duty; nor does he demonstrate how he undertook that duty.  Indeed, Plaintiff fails to state what any Defendant did to undertake a duty to her.

In sum, the Complaint does not allege a single fact from which the Court or any fact finder could conclude that Mr. Webb owed any affirmative duty to Plaintiff.  Consequently, Plaintiff's gross negligence claim against Mr. Webb fails and should be dismissed.

> ### 2.     *Plaintiff fails to sufficiently allege Mr. Webb breached any duty.*

Even assuming, *arguendo*, Plaintiff sufficiently alleged that Mr. Webb owed a special duty to her, he fails to allege facts to demonstrate that Mr. Webb breached such a duty.  The Complaint fails to identify any act that Mr. Webb did "intentionally that [he] ought not to do."  *See Rainey*, 863 S.E.2d at 474.  Nor does the Complaint identify any omission by Mr. Webb at all, much less "the intentional conscious failure to do something which it is incumbent upon [him]."  *See id.* Notably, Plaintiff does not identify a single fact indicating that Mr. Webb knew, or even should have known, of any of the allegedly abusive or exploitative conduct detailed in the Complaint, much less that he intentionally failed to take action to prevent any abuse.

In fact, Plaintiff's own allegations expose the fatal flaws in his gross negligence claim. Plaintiff alleges that "Defendants represented that they had rules, policies and/or procedures specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches, and adults who come into contact with the athletes by virtue of the adults' position of power" (Compl. ¶ 269) and "created a central reporting mechanism" for safety issues. (Compl. ¶ 83.)  Plaintiff cannot plausibly contend that there was a "failure to exercise slight care"

by Defendants that created rules intended to address the abuse that forms the basis for Plaintiff's claim.

Because the Complaint does not allege any facts suggesting that Mr. Webb personally committed any act or omission constituting a failure "to exercise slight care," Plaintiff's gross negligence claim must be dismissed.

### B.     *Plaintiff's civil conspiracy claim should be dismissed.*

To support a claim for civil conspiracy under South Carolina law, Plaintiff must allege facts showing "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting" to Plaintiff. *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021), reh'g denied (Aug. 18, 2021). Plaintiff fails to allege facts supporting any of those elements as to Mr. Webb.

To the extent Plaintiff's civil conspiracy claim is premised upon an allegation that Mr. Webb conspired with Varsity, the claim necessarily fails. It is well-established that a corporation may not conspire with itself – that is, an officer of a corporation, such as Plaintiff alleges Mr. Webb to be here, cannot conspire with the corporation, unless the individual has an independent personal stake in the illegal objective. *Anthony v. Ward*, 336 Fed. Appx. 311, 315 (4th Cir. 2009) (citing *McMillan v. Oconee Me. Hosp., Inc.*, 626 S.E.2d 884, 886-87 (S.C. 2006)). Here, however, Plaintiff has not alleged Mr. Webb has any personal stake in the purported illegal objective. Thus, the intracorporate conspiracy doctrine bars Plaintiff's civil conspiracy claim against Mr. Webb as to any conspiracy he allegedly entered with Varsity. *See id.*

Even if Mr. Webb could plausibly enter into a conspiracy with Varsity, Plaintiff otherwise fails to allege any facts supporting a civil conspiracy claim against Mr. Webb. Plaintiff alleges that "Defendants were a collective group of individuals working in concert and individually toward

31

a common plan." (Compl. ¶ 328.) However, Plaintiff does not allege any facts supporting his claim of a combination or agreement among all Defendants. Nor could he plausibly make such an allegation because any such combination or agreement would include no fewer than fourteen individuals or entities, between and among many of whom Plaintiff has alleged no link whatsoever. In particular, Plaintiff does not allege a single fact supporting a claim that Mr. Webb participated in any combination or agreement with the thirteen other defendants. Indeed, Plaintiff has not even alleged that Mr. Webb knew the other defendants.

Moreover, Plaintiff wholly fails to allege that Mr. Webb undertook any overt act to further such an agreement. The only action Plaintiff attributes to Mr. Webb in the entire Complaint is that in 2003, "Defendant Webb founded Defendant USASF." (Compl. ¶ 47.) However, Plaintiff does not allege that the USASF was founded to commit an unlawful act. Instead, Plaintiff alleges that the USASF was "established to be the 'sanctioning body' that would regulate All-Star cheer." (*Id.* ¶ 80.) Plaintiff's failure to identify an overt act in furtherance of a conspiracy is fatal to his civil conspiracy claim against Mr. Webb.

Finally, Plaintiff does not allege that Mr. Webb has ever possessed the intent to harm that is necessary for Plaintiff to prevail on his civil conspiracy claim. *See Paradis*, 861 S.E. 2d at 780, n.9. ("Since civil conspiracy is an intentional tort, an intent to harm . . . remains an inherent part of the analysis."). Moreover, "'in order for civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the combination or agreement.'" *Id.* (quoting 16 Am. Jur. 2d Conspiracy § 53 (2020)). Thus, even if Plaintiff could allege that Mr. Webb entered into any combination or agreement involving Varsity and USASF, Plaintiff must further allege that Mr. Webb, Varsity, and USASF were aware of the harm or wrongful conduct in 2003—at the beginning of the purported combination or agreement. Plaintiff has not made any such allegation.

32

Consequently, Plaintiff has failed to sufficiently allege his civil conspiracy claim against Mr. Webb.

### C.     *Mr. Webb is not liable for any torts of the corporation.*

South Carolina law presumes that "an officer or a director of a corporation is not, merely as a result of his standing as such, personally liable for torts" of the company. *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 195 (4th Cir. 1997). To impose liability, the corporate officer must have "in some way participated in or directed the tortious act." *Id.* To survive a motion to dismiss, Plaintiff must allege facts which, if true, are sufficient to show Mr. Webb "participated in and directed the wrongful acts." *Scott v. Catawba Valley Brewing Co.*, No. 2:18-CV-1539-RMG, 2018 WL 3966261, at *2 (D.S.C. Aug. 17, 2018).

Here, Plaintiff alleges tort claims for gross negligence and civil conspiracy against Mr. Webb. However, none of Plaintiff's allegations as to these claims assert any facts showing – or even inferring – that Mr. Webb directly participated in or directed the allegedly wrongful conduct. For example, Plaintiff's gross negligence claim generally alleges "Defendants are aware" of dangers associated with training minors and "Defendants have created rules specifically intended" to address these dangers. (Compl. ¶¶ 265-278.) Plaintiff also generally alleges Defendants, collectively, are aware of inappropriate conduct between coaches and minors and failed to take appropriate action when reports or complaints of inappropriate conduct arose. *Id.* at ¶¶ 183, 270, 272-273.

But nowhere in Plaintiff's 62 page First Amended Complaint does he allege that Mr. Webb personally took any action, or failed to take any action, regarding reports or complaints of inappropriate conduct. Nor does he allege that Mr. Webb personally was aware of any such inappropriate conduct. (*See id.* ¶¶ 265-278 (asserting elements for gross negligence claim)). Instead, Plaintiff relies on Mr. Webb's position within the corporation as the sole basis for asserting

liability against Mr. Webb. (*See id.* ¶ 137 ("Upon information and belief, this competition environment was the brainchild of Defendant Jeff Webb, who used the competitions as a mechanism for his companies to establish dominance in the cheer market."); and ¶ 139 ("Defendant Webb is currently Chairman of the board of directors of Varsity Brands, LLC. He was previously Varsity's president but resigned in 2020 . . . .").) Plaintiff has, therefore, failed to sufficiently allege any plausible facts to support imposing individual liability against Mr. Webb for any torts allegedly committed by Varsity. All of Plaintiff's tort claims should be dismissed with prejudice.

<u>**CONCLUSION**</u>

Plaintiff's Complaint makes clear that there is no basis for Mr. Webb to be a defendant in this case, or to be dragged into a court in South Carolina to defend Plaintiff's claims in this lawsuit. Thus, for the foregoing reasons, Mr. Webb respectfully requests that the Court dismiss with prejudice all claims against Mr. Webb.

FAYSSOUX & LANDIS, ATTORNEYS AT LAW, P.A.

*/s/James W. Fayssoux, Jr.*
James Walter Fayssoux, Jr. (Federal Bar # 7449)
Paul S. Landis (Federal Bar # 10084)
Geoffrey W. Gibbon (Federal Bar # 10056)
209 E. Washington Street
Greenville, SC  29601
Telephone: (864)233-0445
*wally@fayssouxlaw.com*
*paul@fayssouxlaw.com*
*geoff@fayssouxlaw.com*

---

LOCKE LORD LLP

Paul Coggins*
Brendan Gaffney*
Katherine Wright*
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
katie.wright@lockelord.com

* Admitted *pro hac vice*

**ATTORNEYS FOR JEFF WEBB**

Dated: December 19, 2022

130971715v.4