# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, John Doe 1, John Doe 2, and John and Jane Does 1-100, <br><br> Plaintiffs, <br><br> v. <br><br> Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation; USA Federation of Sport Cheering d/b/a USA Cheer; Jeff Webb; Charlesbank Capital Partners, LP; Bain Capital, LP; Rockstar Cheer & Dance, Inc.; Katherine Anne Foster as the personal representative of the Estate of Scott Foster; Kathy Foster individually; Kenny Feeley; Josh Guyton; Nathan Allan Plank; Christopher Hinton; Tracy a/k/a or f/k/a Traevon Black; Peter Holley; and other Unknown Defendants, <br><br> Defendants. | Civil Action No.: 6:22-cv-02957-HMH <br><br><br> **DEFENDANT BAIN CAPITAL, LP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Plaintiffs' Opposition ("Opposition" or "Opp'n"), ECF No. 125, to Bain Capital, LP's motion to dismiss, ECF No. 103-1 ("BC Mem."), fails to address the most fundamental of pleading failures because it cannot do so. Plaintiffs' claims against Bain Capital are premised on an extraordinary theory: that Massachusetts-based Bain Capital may be held liable for sexual misconduct perpetrated by individual cheerleading coaches and trainers in South Carolina based *solely* on the allegation that Bain Capital has an ownership interest in a group of corporate entities (the Varsity Defendants) with connections to the broader cheerleading industry. Totally absent from the pleadings or Opposition is any allegation that Bain Capital had any involvement in, connection to, or knowledge of the individual misconduct in South Carolina. There is simply no

basis for Bain Capital's inclusion in this lawsuit, and the Amended Complaint should be dismissed in its entirety as to Bain Capital.

Bain Capital's mere ownership interest in the Varsity Defendants is insufficient to plead either personal jurisdiction or liability. Plaintiffs have failed to articulate any connection between Bain Capital and South Carolina, nor have they come anywhere close to making out a colorable RICO claim, and thus there is no basis for personal jurisdiction. The pleadings contain no allegations that Bain Capital committed a section 2255 or RICO predicate offense and offer no basis for a claim that Bain Capital had any relationship with either Plaintiffs, Rockstar, or the perpetrators of the alleged abuse. And there are no allegations that Bain Capital controlled or directed the activities of any other Defendant or of the purported RICO enterprise. Instead, the Opposition resorts to bare legal conclusions, allegations regarding other defendants, and outrageous new assertions that do not find support anywhere in the pleadings in its attempt to salvage Plaintiffs' claims. The Court should see through these efforts, and Bain Capital should be dismissed from this litigation pursuant to both Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BAIN CAPITAL

The Opposition does not contest that the Court does not have general jurisdiction over Bain Capital in South Carolina. Plaintiffs therefore concede this point. *See* Opp'n at 9–15; *see also UFP E. Div., Inc. v. Selective Ins. Co. of S.C.*, 2017 WL 499083, at *1 n.2 (D.S.C. Feb. 6, 2017) ("[A] court may treat those arguments that the plaintiff failed to address as conceded."); *Campbell v. Rite Aid Corp.*, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014).

Hoping to salvage an argument for *specific* personal jurisdiction, the Opposition requests "[l]imited discovery" into "Bain Capital's involvement in and control over the Varsity organization," erroneously claiming that "Plaintiffs have presented evidence of minimum contacts

between Defendants and the forum state." *See* Opp'n at 16. To the contrary, Plaintiffs are not entitled to even limited jurisdictional discovery where, as here, they have not alleged any forum-related contacts *by Bain Capital* that would permit the Court to exercise specific jurisdiction over it. And, in the absence of such allegations, subjecting Bain Capital to litigation in a forum with which it has no claim-related contacts "would not be consistent with traditional notions of fair play and substantial justice." *See E.E. ex rel. Epsey v. Eagle's Nest Found.*, 200 F. Supp. 3d 626, 636 (D.S.C. 2016). For this reason alone, the Amended Complaint against Bain Capital should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

    **A.**    **Plaintiffs' RICO claim does not establish personal jurisdiction over Bain Capital.**

The Opposition suggests that RICO's authorization of nationwide service of process suffices to establish personal jurisdiction over Bain Capital.[1] *See* Opp'n at 10. Yet Plaintiffs may not rely on RICO for potential personal jurisdiction over Bain Capital where, as here, they "have failed to allege even a colorable RICO claim." *See Godfredson v. JBC Legal Group, P.C.*, 2005 WL 8159322, at *5 (E.D.N.C. July 13, 2005). A colorable claim is one that is "not wholly immaterial or insubstantial." *Iraheta v. Linebarger Goggan Blair & Sampson LLP*, 2015 WL 4653211, at *4–5 (M.D. Ga. Aug. 5, 2015). Where the pleading fails to "identif[y] any predicate acts that could constitute racketeering activity under RICO," Plaintiffs have failed to assert a colorable RICO claim. *See Don't Look Media, LLC v. Fly Victor Ltd.*, 2020 WL 7481448, at *2 (S.D. Fla. Feb. 5, 2020), *aff'd*, 999 F.3d 1284 (11th Cir. 2021); *see also Iraheta*, 2015 WL

---

[1] Plaintiffs do not contend that the Court may exercise jurisdiction over Bain Capital with respect to the Section 2255 claim based on that statute's authorization of nationwide service of process. Plaintiffs have therefore waived the argument. Even if it were asserted, the argument would fail because Plaintiffs have not pled a colorable Section 2255 claim under the statute. *See infra* Section II.A.

4653211, at *4–5 (ruling plaintiff could not take advantage of RICO's nationwide service of process provision where "Plaintiff wholly fail[ed] to allege a colorable RICO claim").

As discussed at greater length in the Varsity Spirit motion ("VS Mem.," and as incorporated into the BC Mem.) and *infra* Section II.B, Plaintiffs' RICO claims are legally unsound and wholly unsupported by any well-pled allegations. At its core, the alleged conspiracy and wrongful conduct center on alleged injuries derived from the sexual abuses each Plaintiff allegedly suffered, *not* on injuries to their "business or property," as required to establish RICO standing. The pleadings cobble together allegations of commercial activities with disparate and distinct allegations of sexual misconduct, and implausibly characterize them in conclusory terms as the acts of a RICO enterprise, a pattern of predicate offenses, and a "conspiracy." But the Amended Complaint and RCS come nowhere close to alleging that Bain Capital (or any other entity Defendant, for that matter) committed a RICO predicate offense or took part in any racketeering conspiracy with the other Defendants. Plaintiffs have utterly failed to assert a colorable RICO claim and thus, are "not entitled to take advantage of that statute's nationwide service of process provision." *See Don't Look Media, LLC,* 2020 WL 7481448, at *2.[2]

**B.     There is no specific jurisdiction over Bain Capital.**

*1.     Purposeful availment.*

The Opposition disregards the purposeful availment analysis, *see* Opp'n at 11–12, which relies on factors the Opposition simply does not mention. *See* BC Mem. at 6. Further, in addition to ignoring the relevant legal test, the Opposition attempts to rewrite the pleadings by pointing to

---

[2] To the extent the Court would exercise pendent jurisdiction over Bain Capital for the non-RICO claims, once the RICO claim is dismissed, pendent jurisdiction evaporates. *See, HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *8 (S.D. W. Va. Aug. 12, 2015) ("Without a federal claim to anchor personal jurisdiction over the LubeCenter, the Court declines to assert pendent personal jurisdiction" with respect to the remaining claims).

allegations that either (1) reference the conduct of *other* defendants or entities—not Bain Capital; or (2) do not relate to South Carolina. To the extent these are new allegations, they are procedurally improper and should not be considered in connection with Bain Capital's motion to dismiss, particularly where Plaintiffs already amended their Complaint and supplemented their pleadings via the RCS. *See TruAuto MC, LLC v. Textron Specialized Vehicles, Inc.*, 2020 WL 438310, at *4 (D.S.C. Jan. 28, 2020) (holding theory argued for in plaintiffs' motion to dismiss opposition "[was] a new allegation not found in the First Amended Complaint and [was] procedurally improper"). In any event, Plaintiffs' purposeful availment theory proceeds without reference to the applicable legal standard and is unsubstantiated by any well-pled factual allegations set forth in the pleadings.

For example, the Opposition contends that Bain Capital "promoted Varsity-certified coaches and gyms in South Carolina," but the underlying pleadings on which the Opposition relies allege that this conduct was undertaken by "Defendant Varsity." *Compare* Opp'n at 12 *with* FAC ¶¶ 206, 284. The Opposition contends that Bain Capital "provided capital for the network of Varsity-affiliated private gyms and coaches throughout the United States" and "spearheaded a scheme to aggressively expand the Varsity brand," but the underlying pleadings do not attribute those activities to Bain Capital. Rather, the pleadings merely allege that Bain Capital "purchased" Varsity Brands, without any mention of or reference to any deliberate conduct by Bain Capital in South Carolina. *Compare* Opp'n at 12–13 *with* FAC ¶¶ 78, 107–109, 188, 196–97. Similarly, the Opposition contends that "[t]his scheme involved significant marketing and business activities that reached into South Carolina," but the Amended Complaint does not allege *Bain Capital's* participation in the string of allegations that the Opposition cites. *See* Opp'n at 12.

In addition, the Opposition contends that Bain Capital had seats on "Varsity's Board of Directors." *See* Opp'n at 12, 13. But an entity's presence on the board of directors of a second

5

entity does not somehow impute the forum contacts of the second entity to the first. *See, e.g.*, *Gray v. Riso Kagaku Corp.*, 82 F.3d 410, 1996 WL 181488, at *3 (4th Cir. 1996) (finding parent company did not have sufficient minimum contacts with South Carolina despite allegation that "a majority of the members of [subsidiary's] board of directors were also associated with [parent]"). Further, the unalleged order from a separate case to which Plaintiffs cite provides no support for the Opposition's baseless speculation that Bain Capital "direct[ed] the activities and future progression of Varsity" in South Carolina or of "Rockstar Greenville," *see* Opp'n at 13, a gym that the Amended Complaint alleges was a "private" facility, *see* FAC ¶ 58, and which the Fosters—not Varsity Spirit, Varsity Brands, or any other entity Defendant—"co-owned, co-operated, managed and/or controlled," *see id.* ¶¶ 21-22. The Opposition suggests that Bain Capital "made public statements about the active role it would take in Varsity's growth," but the single alleged statement does not implicate South Carolina in any way. *See* Opp'n at 13; FAC ¶ 111.

At bottom, the Amended Complaint alleges only that Bain Capital "purchased" Varsity Brands in 2018—nothing more. *See* BC Mem. at 6. The Opposition does not contest, and provides no contrary authority to, the well-established principle that such allegations of corporate ownership are an insufficient basis for establishing the purposeful availment prong of the specific jurisdiction test. *See* BC Mem. at 8; *see also Fancy That! Bistro & Catering, LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 4804974, at *4 (D.S.C. Oct. 14, 2021) (finding lack of specific personal jurisdiction and noting that even "a parent company is not subject to personal jurisdiction in a particular forum merely due to its relationship with a subsidiary"); *Salley*, 2010 WL 5136211, at *4 (holding that a private equity firm's ownership interest in a nursing home in South Carolina was insufficient to confer personal jurisdiction).

2. *Claim relatedness to forum-state activities.*

As acknowledged by the Opposition, the crux of the Amended Complaint is the alleged abuse that Rockstar Coaches perpetrated against Plaintiffs. *See* Opp'n at 14 (citing FAC ¶¶ 200–338). As with the purposeful availment prong, the Opposition points to no allegations of any Bain Capital contacts with South Carolina related to the claim. The Opposition contends that Bain Capital "misled parents and children by certifying certain South Carolina coaches and gyms as 'safe,'" *see* Opp'n at 14, although the pleadings do not allege so. The Amended Complaint does not advance any fraud or deception claim against Bain Capital and the underlying pleadings specify that other entities—not Bain Capital—were responsible for certifying gyms and coaches. *Compare* Opp'n at 14 *with* FAC ¶¶ 141, 164. Again, Plaintiffs' entire predicate for jurisdiction over Bain Capital is reduced to Bain Capital's purported "purchase" and "ownership" of Varsity Brands. *See* Opp'n at 14 (citing FAC ¶¶ 196–98). Mere ownership, however, "is insufficient to confer personal jurisdiction." *See Salley v. Heartland-Charleston of Hanahan,* 2010 WL 5136211 at *4 (D.S.C. Dec. 10, 2010); *see also Fancy That!*, 2021 WL 4804974, at *4.

3. *Reasonableness.*

Because there is a total absence of alleged contacts or business connections—much less "substantial" ones—between Bain Capital and South Carolina, "it would not be reasonable to subject Defendant to the Court's jurisdiction." *See Eagle's Nest*, 200 F. Supp. 3d at 636 ("find[ing] that it would not be reasonable to subject Defendant to the Court's jurisdiction where Defendant d[id] not have a systematic and continuous presence in South Carolina and where Plaintiff's causes of action arise largely from actions taken by Defendant [elsewhere]").[3]

---

[3] There is also no basis to exercise jurisdiction over Bain Capital by imputing to it the minimum contacts of another entity under an alter ego or veil piercing theory. Plaintiffs do not even assert such an argument in their Amended Complaint (or their Opp'n), much less sustain their burden of

### C. Neither jurisdictional discovery nor an evidentiary hearing on jurisdiction is appropriate in the absence of any forum-specific allegations.

Given the complete lack of support for the exercise of specific personal jurisdiction (and the concession that there are no grounds for exercising general personal jurisdiction) over Bain Capital, the Court should reject Plaintiffs' request for jurisdictional discovery and an evidentiary hearing. The Opposition's attempt at conjuring disputed factual questions relating to *Bain Capital*'s possible South Carolina contacts falls flat because the pleadings evidence no such disputed questions. "Here, even when all disputed facts and reasonable inferences are taken in favor of Plaintiffs, Plaintiffs still fail to make a *prima facie* case for personal jurisdiction." *See Hinkle v. Continental Motors, Inc.*, 2017 WL 4574794, at *3 (D.S.C. Oct. 12, 2017). Instead, Plaintiffs offer only speculation about Bain Capital's imagined or potential contacts in South Carolina and conjecture regarding how, if at all, such contacts relate to Plaintiffs' claims in this action. "[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," as here, "a court is within its discretion in denying jurisdictional discovery." *See Givens v. Erie Ins. Co.*, 2022 WL 2759167, at *11 (D.S.C. July 14, 2022); *see also Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *4 (D.S.C. May 1, 2020) ("find[ing] that jurisdictional discovery [was] not warranted because it would be futile" where "Plaintiff failed to allege specific jurisdictional facts"); *Hinkle*, 2017 WL 4574794, at *3 ("A plaintiff is not entitled to discovery merely because he has failed to show jurisdiction."). The Court should reject Plaintiffs' request to fish for a jurisdictional predicate they failed to allege in successive amended pleadings.

---

establishing a *prima facie* claim. *See Salley,* 2010 WL 5136211 at *4 (requiring plaintiff to plead a *prima facie* case for piercing the corporate veil).

## II.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIN CAPITAL

### A.  The Section 2255 Claims Fails (Count I).

Conceding the inadequacy of its Amended Complaint, Plaintiffs' Opposition does not address any of the Section 2255 offenses referenced in the Amended Complaint and does not respond to Bain Capital's arguments on the absence of such allegations. Plaintiffs have therefore abandoned the Section 2255 claim as pled and Bain Capital is entitled to dismissal on that basis. *See UFP*, 2017 WL 499083, at *1 n.2; *Campbell*, 2014 WL 3868008, at *2. Of course, the reason Plaintiffs fail to address these issues is because any contention otherwise would be frivolous, particularly given Plaintiffs' concession that Section 2255 does not provide for vicarious liability. *See UFP*, 2017 WL 499083, at *1 n.2; *Campbell*, 2014 WL 3868008, at *2; *see also* BC Mem. at 10.

Tellingly, Plaintiffs for the first time suggest that Bain Capital aided and abetted the violations of *different statutes*—18 U.S.C. §§ 1589 and § 1591, which involve forced labor and sex trafficking. *See* Opp'n at 16–22. Bain Capital joins in and incorporates by reference the arguments of Varsity Spirit that Plaintiffs never alleged—and therefore may not proceed—on novel predicate offenses. *See* VS Reply § I. Even if procedurally proper, however, the pleadings provide no support for the Opposition's contention that Bain Capital violated 18 U.S.C. §§ 1589 or 1591. Crucially, aiding and abetting claims require proof of knowledge and intent, including "advance knowledge" of the *specific* wrong being aided and abetted. *See Rosemond v United States*, 572 U.S. 65, 76-78 (2014). Plaintiffs do not contend—because it would be frivolous to do so—that Bain Capital had advance knowledge of or intended to facilitate any of the offenses the Opposition belatedly claims. The Opposition's citation to *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)—in which the defendant motel owners were alleged to have possessed specific

9

knowledge of a multi-day sexual assault occurring on their property and to have ignored the victim's pleas for help—only serves to emphasize the outrageousness of Plaintiffs' claims as to Bain Capital.[4]

### B.    Plaintiffs' RICO Claims Fail (Count II).

Bain Capital joins in and incorporates by reference the arguments of Varsity Spirit that Plaintiffs do not have RICO standing and that Plaintiffs have not plausibly alleged either a RICO enterprise with a common purpose or related predicate offenses. *See* VS Reply § II. The Opposition confirms that the RICO allegations are similarly flawed as to Bain Capital, and each of these failings are separate and independent bases for dismissal of Plaintiffs' RICO claims.

#### 1.    *There are no allegations of fraud or predicate offenses by Bain Capital.*

By resorting to two unalleged and novel predicate offenses to prop up their section 2255 claims, the Opposition acknowledges that the Amended Complaint's *alleged* predicate offenses are not supported by the pleadings. *See* VS Reply § II.C; *see also* BC Mem. at 11. And in the entirety of the RICO discussion, the Opposition does not identify or point to any allegations suggesting that Bain Capital committed any predicate offense. *See* Opp'n at 23–26. Instead, the Opposition appears to rely on Bain Capital's purchase of Varsity Brands, *see id.* at 25–26, which is not a crime and cannot support Plaintiffs' RICO claims against Bain Capital. *See* BC Mem. at 11–12.

#### 2.    *There are no allegations that Bain Capital directed the affairs of a RICO enterprise.*

The Opposition does not contend that Bain Capital directed the affairs of any alleged enterprise, only suggesting that there was "[p]articipation by Defendant Bain Capital." *See* Opp'n

---

[4] Indeed, some of the alleged conduct occurred *prior* to Bain Capital's investment. As such, it is impossible for Bain Capital to have known about or intended to facilitate the conduct.

at 26. Plaintiffs therefore concede that there are no allegations of Bain Capital's direction, as necessary to state a civil RICO claim against it. *See* BC Mem. at 12–13.

### 3. There are no allegations that Bain Capital entered into a RICO conspiracy.

The Opposition does not contest that the Amended Complaint wholly fails to allege Bain Capital's entry into an agreement with any party, either to conduct or participate in the affairs of any purported enterprise, or for the commission of at least two racketeering acts. *See* BC Mem. at 13–14. Accordingly, Plaintiffs have abandoned their RICO conspiracy claims against Bain Capital. *See UFP*, 2017 WL 499083, at *1 n.2; *Campbell*, 2014 WL 3868008, at *2.

### C. Plaintiffs' Gross Negligence and Negligent Security Claims Fail (Counts IV & XI).

The Opposition grounds the negligence claims against Bain Capital in the "alleged degree of control and oversight Defendant exercised." *See* Opp'n at 27. But Plaintiffs offer no alleged factual basis for this generic and conclusory assertion—nor could they. Instead, the Opposition points to allegations regarding unspecified "Defendants" and pure speculation. *See id.* at 28. The only factual allegation specific to Bain Capital claims that it "purchased" Varsity Brands in 2018. *See* FAC ¶ 109. That is entirely insufficient to plead the duty element of Plaintiffs' negligence claims or to establish any of the exceptions to South Carolina's fundamental principle that "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *See Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 535 (D.S.C. 2014); *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 754 (4th Cir. 2013) ("[W]holly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.").[5]

---

[5] To the extent the Opposition suggests that Bain Capital had a duty based on the supposed foreseeability of a third party harming a victim, *see* Opp'n at 29–30, under South Carolina law, "[f]oreseeability itself does not give rise to a duty." *Lanier v. Norfolk S. Corp.*, 256 Fed. App'x 629, 633 (4th Cir. 2007). And there are no non-conclusory allegations even suggesting that the

### 1. *Plaintiffs have not alleged a special relationship.*

The first exception applies to custodial relationships, *see* BC Mem. at 15, but the Opposition does not argue or point to any allegations in the pleadings even suggesting that Bain Capital had custody over any Plaintiff, *see* Opp'n at 28. According to the Opposition, Bain Capital merely "promoted a network and structure" where "Varsity and its affiliates" exercised purported "significant control over multiple competitions, camps, gyms, and other cheer events." *See id.* This conclusory, aggregated allegation falls far short of alleging that even *Varsity Spirit* had custody over any particular gym or coach, let alone Bain Capital. The Opposition makes no serious effort to articulate any basis for finding that Plaintiffs have adequately alleged a special relationship with Bain Capital.

Likewise, the Opposition's contentions regarding Bain Capital's purported "control" of various aspects of the cheer environment, including the alleged perpetrators of the abuse, are unsupported by Plaintiffs' actual pleadings. The Opposition maintains that "Bain ha[d] *the ability to*"—not that it actually did—"monitor, supervise, and control the conduct of gyms, owners, and coaches," *see* Opp'n at 28 (emphasis added), but the Amended Complaint does not make any similar assertion, much less any well-pled factual allegations, supporting this conclusory contention. To the contrary, the pleadings aver that other entities, and not Bain Capital, were responsible for credentialing and certifying coaches. *See* FAC ¶¶ 141, 164.

Other than Scott Foster, the Opposition does not argue that Bain Capital had a special relationship with any alleged perpetrator of abuse, *see* Opp'n at 29–30, thus conceding that no special relationship is alleged as to any other Defendant coach or trainer. As to Scott Foster, the

---

asserted injuries were foreseeable to Bain Capital since the alleged abuse was undertaken by individuals who were *not* employed by Varsity Spirit or any affiliate of Bain Capital.

Opposition fails to point to any factual allegation linking him to Bain Capital. Thus, the Opposition does not—and cannot—point to any allegations that Bain Capital had "the ability to monitor, supervise and control" Foster *or* that he "ha[d] made a specific threat of harm directed at a specific individual," both of which are necessary to allege the second exception. *See* BC Mem. at 16 (citing *Doe v. Marion*, 645 S.E.2d 245, 250 (S.C. 2007)). Rather, the Opposition confirms that these dual requirements are unsatisfied, as Plaintiffs fail to contest that Foster was an owner-employee of a private gym, was credentialed and certified by other entities, and had made no specific threat of harm against any specific person. *See* BC Mem. at 16–17.

    2. <u>*Plaintiffs have not alleged a voluntary undertaking.*</u>

The Opposition speculates that Bain Capital had the "*ability to*"—not that it actually did—"make safety rules, to enforce those rules, to vet gyms and coaches, to investigate abuse, and to remove abusers from the program." *See* Opp'n at 28 (emphasis added). But, again, the Opposition does not point to any allegation of a particular action by Bain Capital. *See id.* In fact, the pleadings directly *contradict* such a claim. Plaintiffs allege that entities other than Bain Capital were responsible for credentialing and certifying competitive cheer coaches and trainers. *See* FAC ¶¶ 141, 164. In any event, as a matter of South Carolina law, such assertions regarding the ability to make rules and procedures cannot support finding a voluntary assumption of any duty. *See* VS Reply § IV.C (citing *Doe 2 v. Citadel*, 805 S.E.2d 578, 583 (S.C. Ct. App. 2017)).

    3. <u>*Plaintiffs have not alleged Bain Capital negligently created any risk.*</u>

The Opposition does not contest that the negligent creation of risk exception requires allegations of Bain Capital's "misfeasance, which is 'active misconduct working positive injury to others.'" *See* BC Mem. at 17. Plaintiffs do not identify or adequately plead any misfeasance on Bain Capital's part and therefore cannot invoke the fourth exception.

13

### D. Plaintiffs' Unjust Enrichment Claim Fails (Count IX).

Despite claiming that Plaintiffs "paid substantial dues, fees, and other valuable consideration" directly to Bain Capital, the Opposition does not identify—and the pleadings themselves do not allege—any such payments to Bain Capital. *See* Opp'n at 30. Since an unjust enrichment claim requires a plaintiff's conferral of a non-gratuitous benefit on the defendants, this is reason alone to dismiss Count IX as to Bain Capital. *See* BC Mem. at 18.

Additionally, the Opposition's assertions that Plaintiffs made such payments "*vis a vis*" a so-called "Varsity network" and that all "Defendants" derived alleged revenues cannot state a claim against Bain Capital. *See* Opp'n at 30–31. The pleadings allege that Bain Capital is a legal entity distinct and separate from any of the Varsity entities involved in this action. *See* FAC ¶ 39 (alleging Bain Capital's organization), ¶ 109 (alleging Bain Capital's purchase of Varsity Brands); *see also* Opp'n at 33 (clarifying Plaintiffs' claims that Bain Capital is "liable in and of themselves"). Plaintiffs cannot support a claim for unjust enrichment by conflating Bain Capital with other separate entities alleged to have received payments. *See* BC Mem. at 18 (citing *56 Leinbach Invs., LLC v. Magnolia Paradigm, Inc.*, 769 S.E.2d 242, 249 (S.C. Ct. App. 2014)). And neither the pleadings nor the Opposition plausibly states any misconduct by Bain Capital. Accordingly, Plaintiffs fail to allege "ill-gotten gains" or unjust enrichment against Bain Capital. *See* BC Mem. at 18–19.

### E. Plaintiffs' Civil Conspiracy Claims Fail (Count XII).

Plaintiffs fail to point to any allegation of any agreement or meeting of the minds between Defendants to commit an unlawful act or a lawful act by unlawful means, as necessary to state a civil conspiracy claim. Instead, the Opposition summarily contends that the "[Amended] Complaint alleges Defendant Bain Capital conspired with the remaining Defendants to falsely promote the Varsity network as a safe environment for under age athletes." *See* Opp'n at 31–32.

Plaintiffs' conclusory contention that Bain Capital and all other Defendants "conspired" is insufficient to maintain a civil conspiracy claim.  *See, e.g.*, *Crawford v. Newman*, 2019 WL 8806172, at *3 (D.S.C. Dec. 9, 2019) (holding that "Plaintiff offer[ed] only conclusory allegations of an agreement or meeting of the minds between the Defendants which fail to state a claim for civil conspiracy, such that these claims are subject to summary dismissal"), *adopted by* 2020 WL 2523167 (D.S.C. May 18, 2020), *aff'd by* 837 Fed. App'x 201 (4th Cir. 2021); *Bell v. Am. Int'l Indus.*, 2018 WL 2745238, at *7 (M.D.N.C. June 7, 2018).

### F. John Doe 1's State Law Claims Are Time-Barred.

Bain Capital joins in and incorporates by reference the arguments of Varsity Spirit regarding the untimeliness of John Doe 1's state law claims.  *See* VS Reply § X.

## CONCLUSION

For the foregoing reasons and those stated in Bain Capital's opening brief, the Court should dismiss the Amended Complaint in its entirety as to Bain Capital.

Respectfully submitted,

*/s/ Jennifer E. Johnsen*
Jennifer E. Johnsen (Fed. Bar No. 5427)
T. David Rheney (Fed. Bar No. 5030)
GALLIVAN, WHITE & BOYD, P.A.
P.O. Box 10589
Greenville, South Carolina 29603
T: (864) 271-9580
jjohnsen@gwblawfirm.com
drheney@gwblawfirm.com

*Counsel for Defendant Bain Capital, LP*

Greenville, South Carolina
February 2, 2023