UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jane Doe 1; Jane Doe 2; Jane Doe 3; Jane Doe 4; Jane Doe 5; Jane Doe 6; Jane Doe 7; John Doe 1; John Doe 2; and John and Jane Does 1-100,<br><br>         Plaintiffs,<br><br>      v.<br><br>Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation; USA Federation of Sport Cheering d/b/a USA Cheer; Jeff Webb; Charlesbank Capital Partners, LP; Bain Capital, LP; Rockstar Cheer & Dance, Inc.; Katherine Anne Foster as the personal representative of the Estate of Scott Foster; Kathy Foster individually; Kenny Feeley; Josh Guyton; Nathan Allan Plank; Christopher Hinton; Tracy a/k/a or f/k/a Traevon Black; Peter Holley; and other Unknown Defendants,<br><br>         Defendants. | Civil Action No. 6:22-cv-02957-HMH<br><br><br><br>**MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT KATHY FOSTER INDIVIDUALLY** |
| Jane Doe 8,<br><br>         Plaintiff,<br><br>      v.<br><br>Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation; USA Federation of Sport Cheering d/b/a USA Cheer; Jeff Webb; Charlesbank Capital Partners, LP; Bain Capital, LP; Rockstar Cheer & Dance, Inc.; Katherine Anne Foster as the personal representative of the Estate of Scott Foster; Kathy Foster individually; Kenny Feeley; Josh Guyton; Nathan Allan Plank; Christopher Hinton; Tracy a/k/a or f/k/a Traevon Black; Peter Holley; and other Unknown Defendants,<br><br>         Defendants. | Civil Action No. 6:22-cv-03508-HMH |

| | |
|---|---|
| Jane Doe 9,<br><br>                Plaintiff,<br><br>v.<br><br>Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation d/b/a U.S. All Star Federation; USA Federation for Sport Cheering d/b/a USA Cheer; Charlesbank Capital Partners, LP; Bain Capital, LP; Jeff Webb, individually; Rockstar Cheer & Dance, Inc.; Katherine Anne Foster as the personal representative of the Estate of Scott Foster; Kathy Foster, individually; Josh Guyton; Traevon Black a/k/a Tray Black n/k/a Tracey Black; and other Unknown Defendants,<br><br>                Defendants. | Civil Action No. 6:22-cv-03509-HMH |
| John Doe 3,<br><br>                Plaintiff,<br><br>v.<br><br>Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation d/b/a U.S. All Star Federation; USA Federation for Sport Cheering d/b/a USA Cheer; Charlesbank Capital Partners, LP; Bain Capital, LP; Jeff Webb, individually; Rockstar Cheer & Dance, Inc.; Katherine Anne Foster as the personal representative of the Estate of Scott Foster; Kathy Foster; Traevon Black a/k/a Tray Black n/k/a Tracey Black; Jarred Carruba; and other Unknown Defendants,<br><br>                Defendants. | Civil Action No. 6:22-cv-03510-HMH |

TO:    THE PLAINTIFFS AND THEIR ATTORNEYS, BAKARI T. SELLERS, ESQUIRE, JOSEPH PRESTON STROM, JR., ESQUIRE, MARIO A. PACELLA, ESQUIRE, AMY E. WILLBANKS, ESQUIRE, JESSICA L. FICKLING, ESQUIRE, ALEXANDRA M. BENEVENTO, ESQUIRE, AMY L. GAFFNEY, ESQUIRE, REGINA HOLLINS LEWIS, ESQUIRE, CHAD A. MCGOWAN, ESQUIRE, S. RANDALL HOOD, ESQUIRE, AND WHITNEY B. HARRISON, ESQUIRE

**YOU WILL PLEASE TAKE NOTICE** that Defendant Kathy Foster Individually ("Ms. Foster"), through her undersigned counsel, hereby moves for an order granting her judgment on the pleadings on all remaining counts asserted against her. This motion is made pursuant to Rule 12(c), Fed. R. Civ. P., as well as other applicable law, and on the basis that the aforementioned counts fail to state claims upon which relief can be granted against Ms. Foster.

## INTRODUCTION

In these consolidated tort actions, the Plaintiffs—former athletes at a cheerleading gym formerly operated by Rockstar Cheer & Dance, Inc. ("Rockstar")—generally allege that they are victims of a pattern of abuse against them and that the Defendants are liable for injuries resulting from that abuse. In their pleadings, the Plaintiffs asserted seven counts against Ms. Foster: (1) Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C § 2255 ("CAVRA"); (2) Civil Conspiracy in Violation of the RICO Act Pursuant to 18 U.S.C. § 1962(c) and § 1962(d) ("RICO"); (3) Violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20 ("SCUTPA"); (4) Gross Negligence; (5) Negligent Supervision; (6) Respondeat Superior[1]; and (7) Civil Conspiracy.

On September 11, 2023, the court entered an Opinion and Order (Docket No. 274 in C/A 2957; Docket No. 193 in C/A 3508; Docket No. 176 in C/A 3509; Docket No. 183 in C/A 3510) (the "September 11 Order") dismissing the Plaintiffs' CAVRA, RICO, SCUTPA, and civil conspiracy counts against Ms. Foster. Following entry of the September 11 Order, three counts remain against Ms. Foster: (1) Gross Negligence; (2) Negligent Supervision; and (3) Respondeat Superior.[2] As set forth herein, judgment on the pleadings should be granted to Ms. Foster on these remaining counts.

---

[1] This count is asserted only in C/A 2957, not in C/A 3508, C/A 3509, or C/A 3510.
[2] See Footnote 1, *supra*.

## FACTUAL ALLEGATIONS

**Jane Doe 1** alleges that, in order to "facilitate her recruitment by the University of Louisville," she "traveled to [the] University of Louisville . . . with Defendants Scott Foster and Kathy Foster" and that they "arrived at the hotel a day earlier than the rest of the team." 1st Am. Compl. in C/A 2957 (Docket No. 8) at ¶ 247-49. She further alleges that Scott Foster "entered her room and proceeded to sit on her bed and come onto [her]." Id. at ¶ 249. Jane Doe 1 does not allege any specific wrongdoing by Ms. Foster.

**Jane Doe 2** alleges that, "[d]uring one of her earliest practices" at Rockstar's gym, she "trained with Defendant Scott Foster, who complimented her on her looks, and began almost immediately to touch her inappropriately." Id. at ¶ 256. She further alleges that, "[i]n the months that followed, Defendant Scott Foster, with Defendant Kathy Foster's knowledge, began to invite Plaintiff Jane Doe 2 to his house." Id. at ¶ 257. She also alleges that Scott Foster and other Rockstar coaches provided her and other underage athletes with drugs and alcohol. Id. at ¶ 258-60. Jane Doe 2's only specific allegation against Ms. Foster is that Ms. Foster had knowledge that Scott Foster invited Jane Doe 2 to his house. She does not allege any wrongdoing by Ms. Foster.

**Jane Doe 3** alleges that, while they were at a competition, "Defendant Kenny Feeley . . . climbed into bed with [her] and groped and fondled her, and digitally penetrated her." Id. at ¶ 272. She further alleges that Kenny Feeley took her to his apartment, "where he gave her alcohol and marijuana, before transporting [her] to a secondary location, where he raped her." Id. at ¶ 274. Jane Doe 3's only specific allegation against Ms. Foster is that, "[w]hile Plaintiff Jane Doe 3 was still cheering for Defendant [Scott] Foster, she would regularly spend time at the

home of Defendants Scott and Kathy Foster, where they would all get in a hot tub together and the Fosters would provide Plaintiff Jane Doe 3 with alcohol." Id. at ¶ 278.[3]

**Jane Doe 4** alleges that, at a certain competition, "Defendant Scott Foster approached [her] and asked her to go back to his hotel room, where he proceeded to serve [her] alcohol." Id. at ¶ 288. She further alleges that Scott Foster kissed her and that, "[w]ithin several months, Defendant [Scott] Foster and Plaintiff Jane Doe 4 were seeing one another several times a week during which time Defendant [Scott] Foster would serve [her] alcohol and have sex." Id. at ¶ 291. She also alleges that, "[o]n numerous occasions, [she] would go into Defendant Scott Foster's hotel room and they would engage in sex." Id. at ¶ 292. Jane Doe 4 does not allege any specific wrongdoing by Ms. Foster.

**Jane Doe 5** alleges that, "[w]hile [she] was at the gym at practice, Josh Guyton would often touch her inappropriately," and that "[o]n one occasion at the gym, Josh Guyton put his hands on [her] upper thighs and questioned her about whether she shaved her bikini area." Id. at ¶ 301. She further alleges that Josh Guyton "lured [her] to his bedroom where he proceeded to touch [her] in a sexual and inappropriate way, tickling her and attempting to 'cuddle' her." Id. at ¶ 303. Jane Doe 5 does not allege any specific wrongdoing by Ms. Foster.

**Jane Doe 6** alleges that, while she was at a cheer camp in Miami, Scott Foster gave her a capful of "G," which he described as "a substance used by body builders to make them look more muscular before a competition." Id. at ¶¶ 307-08. She further alleges that Scott Foster subsequently took her to a nightclub, where she "passed out on the couch in the VIP section, vomited on several occasions in several locations, and had to be showered." Id. at ¶ 312. She

---

[3] Ms. Foster denies providing alcohol to Jane Doe 3, but even assuming the truth of that allegation, it does not give rise to a tort claim absent injury resulting specifically from the alleged alcohol use. Such injury is not alleged.

also alleges that Scott Foster gave her "G" on another occasion. Id. at ¶ 313. Jane Doe 6 does not allege any specific wrongdoing by Ms. Foster.

**Jane Doe 7** alleges recalling "abusive behavior by Kathy Foster, including withholding water from athletes, excessive physical punishment and conditioning, and verbal abuse." Id. at ¶ 320. She further alleges recalling Ms. Foster "bullying and body shaming young athletes, including Plaintiff Jane Doe 7." Id. However, she does not allege any tortious conduct by Ms. Foster. Jane Doe 7 further alleges that Defendant Nathan Alan Plank requested nude photos of her, sent her nude photos of himself and videos of himself masturbating, and "would often grope and touch [her] in an inappropriate way during stunting." Id. at ¶¶ 322-24, 326. She also alleges that, while watching a movie together, Defendant Christopher Hinton "began to question [her] about her sex life" and "forced [her] to perform oral sex on him." Id. at ¶¶ 330-31.

**Jane Doe 8** alleges that, at a party at the home of Defendant Tracy Black, "[she] and other underaged athletes were provided alcohol and marijuana by [Tracy Black], Joshua Guyton and others." Compl. in C/A 3508 (Docket No. 1) at ¶¶ 218-20. She further alleges that, at the party, she was forced to participate in the "firetruck game," during which "Defendant Guyton ran his hands up [her] thighs and up towards her pelvic region." Id. at ¶¶ 221-22. She also alleges that Josh Guyton had sex with her on several occasions, and that Christopher Hinton sent her sexually explicit messages and nude photos, forcibly kissed her, and "grope[d] and touch[ed] [her] in a sexually inappropriate way." Id. at ¶¶ 226-28. Jane Doe 8 does not allege any specific wrongdoing by Ms. Foster.

**Jane Doe 9** alleges that she "was provided with alcohol, LSD, acid, psychedelic mushrooms, cocaine and MDMA by adult coaches, including Defendant Tracey Black and others at the Rockstar house." Compl. in C/A 3509 (Docket No. 1) at ¶¶ 219. She further alleges that

Tracey Black "provided [her] with cocaine for her use" and that "Defendant Tracey Black and other adult coaches and parents provided [her] with alcohol and drugs on a recurrent basis." Id. at ¶¶ 221-22. She also alleges that Josh Guyton sent her "sexually explicit messages on Snapchat" and later "sexually assaulted her [while] she was heavily intoxicated." Id. at ¶¶ 223-24. Jane Doe 9's only specific allegation against Ms. Foster is that Ms. Foster coached Jane Doe 9 on the Heartbreakers and Smashing Pumpkins teams. Id. at ¶ 213. Jane Doe 9 does not allege any wrongdoing by Ms. Foster.

**John Doe 1** alleges that, in certain communications, "Defendant Scott Foster [asked] for [him] to engage in sexual acts." 1st Am. Compl. in C/A 2957 (Docket No. 8) at ¶¶ 211. He further alleges that Scott Foster asked him "to send photographs of various parts of [his] body including [his] genitalia." Id. at ¶ 213. He also alleges that Scott Foster "sent [him] pictures of [Scott Foster's] body, including his penis," id. at ¶ 214, that he had sexual encounters with Scott Foster in 2019, id. at ¶¶ 218-19, and that "[h]e performed oral sex on Defendant Scott Foster . . . and also received oral sex from Defendant Scott Foster." Id. at ¶ 220. John Doe 1 does not allege any specific wrongdoing by Ms. Foster.

**John Doe 2** alleges that "Defendants Black and Holley . . . pressured [him] to send nude photographs," which he eventually relented and sent. Id. at ¶¶ 231-32. He further alleges that Rockstar's coaches pressured him to visit the "Rockstar house," which he alleges "was a house paid for by Defendant's [sic] Scott and Kathy Foster," id. at ¶ 234, and that "Rockstar athletes and coaches, including Defendants Scott and Kathy Foster, used the 'Rockstar house' to host parties, do drugs, and drink alcohol with minor athletes." Id. at ¶ 236.[4] He also alleges that a

---

[4] Ms. Foster denies providing drugs or alcohol to John Doe 2, but even assuming the truth of that allegation, it does not give rise to a tort claim absent injury resulting specifically from the alleged drug or alcohol use. Such injury is not alleged.

coach "tried in engage in oral sex with [him] and forced [him] to watch pornographic videos," id. at ¶ 237, that a Rockstar coach "would often invite [him] over and offer marijuana and alcohol," id. at ¶ 239, and that "Defendants Scott Foster and Kathy Foster knew and condoned this behavior[.]" Id. at ¶ 240. Finally, he alleges that "he also had to undergo sadistic and brutal conditioning work-outs any time that his team did not perform to the caliber that Defendant Kathy Foster expected." Id. at 241.

**John Doe 3** alleges that, on numerous occasions in 2014 and 2015, Defendant Tracey Black "engaged in sexual intercourse with [him]." Compl. in C/A 3510 (Docket No. 1) at ¶ 213. He further alleges that "Defendant Jared Carruba, another adult coach at Defendant Rockstar, did on several occasions, send sexually explicit messages and photos via Snapchat to [him.]" Id. at ¶ 216. He also alleges that Scott Foster provided him alcohol, cigarettes, and cocaine. Id. at ¶¶ 218-19. John Doe 3 does not allege any specific wrongdoing by Ms. Foster.

## APPLICABLE LAW

Under Rule 12(b)(6), Fed. R. Civ. P., a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citations and quotation marks omitted). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013).

**ARGUMENT**

I. **THE PLAINTIFFS' GROSS NEGLIGENCE COUNTS FAIL AS AGAINST MS. FOSTER BECAUSE THEY DO NOT SUFFICIENTLY ALLEGE THE ELEMENTS OF THE CAUSE OF ACTION.**

"A plaintiff prosecuting a negligence claim must demonstrate (1) the defendant[] owed her a duty of care; (2) the defendant[] breached that duty by a negligent act or omission; and (3) she suffered damage as a proximate result of that breach." Nelson v. Piggly Wiggly Cent., Inc., 390 S.C. 382, 391, 701 S.E.2d 776, 780 (Ct. App. 2010) (citation omitted). The first element— the existence of a duty of care owed by the defendant—is critical. See, e.g., Chastain v. Hiltabidle, 381 S.C. 508, 519, 673 S.E.2d 826, 831 (Ct. App. 2009) ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff, and absent such a duty, no actionable negligence exists.") (citation omitted). It presents a threshold question of law that must be decided by the court, not by a jury. See, e.g., Easterling v. Burger King Corp., 416 S.C. 437, 446, 786 S.E.2d 443, 448 (Ct. App. 2016) ("In any negligence action, the threshold issue is whether the defendant owed a duty to the plaintiff. The court must determine, as a matter of law, whether the law recognizes a particular duty.") (citations and quotation marks omitted). See also Spence v. Wingate, 395 S.C. 148, 160, 716 S.E.2d 920, 926 (2011) ("The determination of the existence of a duty is solely the responsibility of the court. Whether the law recognizes a particular duty is an issue of law to be decided by the Court.") (citation and quotation marks omitted). If no duty exists, "the defendant in a negligence action is entitled to a judgment as [a] matter of law." Cole v. Boy Scouts of Am., 397 S.C. 247, 251, 725 S.E.2d 476, 478 (2011).

The Plaintiffs are responsible for identifying (1) the duty or duties allegedly owed by Ms. Foster and (2) their source. See, e.g., Trask v. Beaufort Cty., 392 S.C. 560, 566, 709 S.E.2d 536,

539 (Ct. App. 2011) ("In a negligence cause of action, it is the plaintiff's burden to establish that a duty of care is owed to him by the defendant."); Nelson, 390 S.C. at 392, 701 S.E.2d at 781 ("A plaintiff must identify a duty that the defendant has to protect her from a particular harm to merit consideration of her claim by a jury."). See also Hendricks v. Clemson Univ., 353 S.C. 449, 456-57, 578 S.E.2d 711, 714 (2003) ("An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. Ordinarily, the common law imposes no duty on a person to act.") (citation omitted). However, the pleadings fail to identify any statute, contract, relationship, status, property interest, or other special circumstance creating a duty owed by Ms. Foster in her individual capacity.

The pleadings likewise fail to allege specific conduct by Ms. Foster that breached some purported duty and proximately caused damage to the Plaintiffs. With few or no exceptions, the affirmative misconduct alleged in the pleadings was carried out by parties other than Ms. Foster, and any threadbare allegations against her do not rise to the level required by the U.S. Supreme Court. See, e.g., Iqbal, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); Id. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); Id. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Id. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'") (brackets in original). Accordingly, judgment on the pleadings should be granted to Ms. Foster on the Plaintiffs' gross negligence counts.

II. **THE PLAINTIFFS' NEGLIGENT SUPERVISION COUNTS FAIL AS AGAINST MS. FOSTER DUE TO THE LACK OF AN EMPLOYMENT RELATIONSHIP BETWEEN MS. FOSTER AND THE PURPORTED WRONGDOERS.**

Under South Carolina law, the tort of negligent supervision is premised upon the existence of an employment relationship between the defendant and the alleged wrongdoer. See, e.g., James v. Kelly Trucking Co., 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008) ("In circumstances where an *employer* knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the *employer* was itself negligent in hiring, supervising, or training the employee[.]") (emphasis added); Charleston v. Young Clement Rivers & Tisdale, LLP, 359 S.C. 635, 645, 598 S.E.2d 717, 722-23 (Ct. App. 2004) ("[A]n *employer* may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the *employer*, or is using a chattel of the *employer*, (2) the *employer* knows or has reason to know that he has the ability to control his employee, and (3) the *employer* knows or should know of the necessity and opportunity for exercising such control.") (citing Degenhart v. Knights of Columbus, 309 S.C. 114, 116-17, 420 S.E.2d 495, 496 (1992)) (emphasis added).

In these actions, the Plaintiffs seek to hold Ms. Foster liable for negligent supervision of purported wrongdoers—former cheerleading coaches—who allegedly harmed the Plaintiffs. However, the Plaintiffs allege that the purported wrongdoers were employed by parties (primarily Rockstar) other than Ms. Foster. See 1st Am. Compl. in C/A 2957 (Docket No. 8) at ¶¶ 21, 23-28; Compl. in C/A 3508 (Docket No. 1) at ¶¶ 13, 16-18; Compl. in C/A 3509 (Docket No. 1) at ¶¶ 13, 16-17; Compl. in C/A 3510 (Docket No. 1) at ¶¶ 13, 16-17. In light of the lack of an employment relationship between Ms. Foster and the purported wrongdoers, judgment on the pleadings should be granted to Ms. Foster on the Plaintiffs' negligent supervision counts. See

Opinion and Order (Docket No. 308 in C/A 2957; Docket No. 224 in C/A 3508; Docket No. 207 in C/A 3509; Docket No. 217 in C/A 3510) (the "November 2 Order") at 11-12 (dismissing the Plaintiff's negligent supervision counts as against the Estate of Scott Foster for lack of an employment relationship).

**III.     THE PLAINTIFFS' RESPONDEAT SUPERIOR COUNT FAILS AS AGAINST MS. FOSTER DUE TO THE LACK OF AN EMPLOYMENT RELATIONSHIP BETWEEN MS. FOSTER AND THE PURPORTED WRONGDOERS.**

The doctrine of respondeat superior is likewise premised upon the existence of an employment relationship between the defendant and the alleged wrongdoer. See, e.g., James, 377 S.C. at 631, 661 S.E.2d at 330 ("The doctrine of respondeat superior provides that the *employer*, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment.") (emphasis added). Thus, judgment on the pleadings should be granted to Ms. Foster on the respondeat superior count asserted in C/A 2957 for the reasons discussed in Section II, *supra*.

## CONCLUSION

For the reasons explained above, Defendant Kathy Foster Individually respectfully requests that judgment on the pleadings be granted to her on the Plaintiffs' gross negligence, negligent supervision, and respondeat superior counts, and that she be dismissed as a defendant in these actions.

This motion is supported by the pleadings in this action, all applicable statutes and case authority, the applicable Rules of Civil Procedure, and such other evidence and authority as the court may find acceptable. Pursuant to Local Civil Rule 7.04 (D.S.C.), this motion is not accompanied by a supporting memorandum because a full explanation of the motion as set forth in Local Civ. Rule 7.05 (D.S.C.) is contained within the motion and a memorandum would serve no useful purpose.

Pursuant to Local Civil Rule 7.02 (D.S.C.), the undersigned counsel states that there is no duty of consultation on a dispositive motion.

                                        *s/*  
                                        CURTIS W. DOWLING, DIST. CT. ID NO. 4185  
                                        MATTHEW G. GERRALD, DIST. CT. ID NO. 10055  
                                        BARNES, ALFORD, STORK & JOHNSON, LLP  
                                        1613 Main Street (29201)  
                                        Post Office Box 8448  
                                        Columbia, SC 29202  
                                        803.799.1111 (Office)  
                                        803.254.1335 (Fax)  
                                        curtis@basjlaw.com  
                                        matt@basjlaw.com  
                                        Attorneys for Kathy Foster Individually

November _____, 2023